449 So.2d 1338 (1984)
Vera Lydia SCHNEIDER, et al.
v.
Dorman STRAHAN, et al.
No. 82-C-2903.
Supreme Court of Louisiana.
April 2, 1984.
Rehearing Denied May 31, 1984.
Dissenting Opinion June 1, 1984.
*1339 James J. Gleason, III, Mandeville, for applicants.
Louis M. Keifer, Jr., Metairie, for respondents.
LEMMON, Justice.
This is a workmen's compensation suit in which the widow and child of Horst Schneider seek to recover benefits on account of Schneider's death which plaintiffs contend arose out of his employment. The trial court, finding that there was no causal connection between Schneider's work activities and his fatal heart attack, dismissed the suit. The court of appeal affirmed. 422 So.2d 1377. We granted certiorari to review these rulings. 427 So.2d 1199.
Defendant was a painting contractor. At the time of his death in June, 1977, Schneider had worked for defendant for more than ten years and was a painting foreman, performing both supervisory work and manual labor. Schneider's crew, consisting basically of himself and two other men, was painting at a shopping center construction site, usually working forty hours a week. About six hours of Schneider's eight-hour workday was spent in physical labor. The crew performed both outside and inside work, but there was no air conditioning available for the interior work. The average daily high temperature for the month was 96 degrees.
Because a major tenant had scheduled the opening date for its store, there was considerable pressure on Schneider for his crew to complete the job. Although the work was proceeding on schedule, the tenant urged Schneider to finish the painting so that carpets could be laid.
On Wednesday, June 15, defendant's crew was doing touchup painting of an area high up on the outside wall. While one worker was painting on a ladder anchored against a loading platform, Schneider extended his arms above his head and held the ladder away from the freshly painted building. After 15 or 20 seconds, Schneider suddenly asked the worker to get down because he could not hold the ladder any longer. When Schneider put the ladder down, he was "flustered" and red in the face, according to the description of his coworker, who was apprehensive that Schneider was about to faint.
*1340 Schneider eventually resumed his duties and worked the remainder of the day, as well as on Thursday and Friday, without displaying any further symptoms. During that time, Schneider's chores included pulling along a scaffold on which other workers were painting. One painter testified that this chore was particularly difficult and strenuous because one of the wheels on the scaffold was broken at the time.
On Saturday, June 18, while eating breakfast at home, Schneider suffered severe chest pains. The doctor diagnosed a coronary insufficiency and hospitalized Schneider through Friday, June 24. While Schneider was in the hospital, defendant's painting work got so far behind that overtime work was scheduled for Saturday, June 25. Schneider also learned that an atrium had been painted the wrong color.
Upon releasing Schneider from the hospital, the doctor instructed him to go home, to remain cool, to observe a special diet, and to refrain from strenuous activity. However, Schneider had his wife drive him from the hospital to the job site, where he spent one and a half hours discussing the progress of the work. When he left for home, he stretched out on the car seat and took a nitroglycerine pill that the doctor had prescribed.
The next day (Saturday), despite his wife's disapproval, Schneider drove to the job site and remained there for about two hours. He discussed the job and watched the workers, but he also assisted twice in moving a scaffold. When he returned home, he was extremely tired, and he rested the remainder of the weekend.
At 1:00 a.m. on Monday, June 27, Schneider was rushed to the hospital by ambulance. He died later that morning of an acute myocardial infarction.
Schneider's physician, Dr. Millet, had been treating him since October, 1975 for gastrointestinal problems, but had not suspected any heart trouble. Dr. Millet had determined that Schneider had a slight hiatal hernia, acute gastritis, and a duodenal ulcer. Chest X-rays and an electrocardiogram in 1976 were reported within normal limits.
An electrocardiogram at the hospital on June 18, 1977 revealed heart disease (myocardial ischemia) of recent onset, but no myocardial infarction. At the time of discharge, Dr. Millet diagnosed coronary insufficiency syndrome and arteriosclerosis heart disease.
Dr. Millet testified that Schneider had reported during his hospitalization that he had previously experienced chest pains while lifting objects. The doctor further opined that Schneider's heart condition could have been aggravated by tension, heat, isometric exercise (such as pulling a ladder with his arms above his head) and driving. The doctor who performed the autopsy found an acute coronary occlusion of the left anterior descending artery, severe extensive coronary arteriosclerosis, an old small posterior myocardial infarction, and a recent extensive myocardial infarction.
The trial court, in reasons for judgment, noted that Schneider had an extensively diseased heart, that the Saturday, June 18 incident at breakfast was the first occasion on which Schneider evidenced symptoms directly attributable to heart disease, that the fatal attack occurred at home in the middle of the night, that both attacks occurred off the job many hours after performance of work without any related on-the-job symptoms, and that Dr. Millet had not attached any particular significance to the incident which occurred while Schneider was supporting a coworker on the ladder. While the court conceded that compensation may be awarded when the death occurs off the job after an on-the-job incident if there is medical correlation between the job duties, the incident and the resulting death, the court concluded there was insufficient medical correlation between Schneider's employment activities and his death. After reviewing the record, the court of appeal was "unable to say that the trial court's finding of lack of work causation is clearly wrong." 422 So.2d at 1379.
*1341 When the employee has a preexisting heart disease, a heart accident may be found to arise out of employment if the work exertion is of a degree greater than that generated in everyday nonemployment life. Guidry v. Sline Indus. Printers, Inc., 418 So.2d 626 (La.1982). Thus, if there is a personal causal contribution (in the form of a diseased heart) to the heart accident, the employment causal contribution must take the form of an exertion greater than that of nonemployment life. 1B A. Larson, Workmen's Compensation § 38-83, 7-233 (1980). However, whether or not there is a personal weakness or disease, the claimant must also establish medically that employment exertion contributed causally to that heart attack. Larson, above.
Schneider's fatal attack did not occur on the job. The only on-the-job incident which suggested possible medical problems caused by employment exertion occurred 13 days earlier. While plaintiffs proved that Schneider's exertion which caused this incident was greater than that of nonemployment life, there was little medical proof that employment exertion was linked to the fatal attack or that the ladder incident on the job progressed to the fatal attack 13 days later. Dr. Millet stated that "it was difficult to identify the precipitating cause for the problem on the 18th" and that "any number of factors" could have caused the acute infarction on the 27th.
The treating physician's testimony was equivocal at best. If the trial court had awarded compensation, an appellate court may well have found that the medical and lay evidence, viewed in the light most favorable to the prevailing party, was sufficient to support the judgment. However, the trial court ruled against plaintiffs on the basis of insufficient medical proof. An appellate court reviewing this record under the appropriate standard of review simply should not disturb the supported conclusions of the trier of fact.
Accordingly, the judgments of the lower courts are affirmed.
DENNIS and WATSON, JJ., dissent.
DIXON, C.J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Even if there is doubt that the June 18 incident was job-related, there can be no doubt that the decedent's work activities upon his release from the hospital were causally related to his fatal attack.

ON APPLICATION FOR REHEARING
WATSON, Justice, dissenting.
The majority's recitation of the facts clearly demonstrates that compensation is due and that the trial court was wrong. Workers' compensation laws are to be liberally interpreted in favor of the injured employee or his heirs. Here, the deceased suffered an accident while holding the ladder. Later, he commendably, but foolishly, attempted to return to work or at least to discharge his supervisory duties and suffered exacerbation of his condition. On one of the days he attempted to return to work, he had to stretch out on the car seat and take a nitroglycerine pill.
The majority seizes on the fact that Schneider lived long enough to return home and rest there for about one and a half days before dying in the hospital. This does not negate his accident on the job which obviously contributed to his death.
Serious questions are raised concerning the standard of review in compensation cases when this court says essentially that the court of appeal was required to go along with the trial court, which was either right or wrong on a simple set of facts. Actually, this court is probably saying that the court of appeal is correct in affirming the trial court when the latter is wrong on a question of law, not of fact. Such a decision is small solace to the surviving widow and child.
I would grant the application for rehearing.