467 So.2d 1246 (1985)
William A. WALKER, Plaintiff-Appellee,
v.
AUSTIN POWER COMPANY, Defendant-Appellant.
No. 16867-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
Writ Denied May 31, 1985.
*1247 Lunn, Irion, Johnson, Salley & Carlisle by Frank M. Walker, Jr., Shreveport, for defendant-appellant.
Whitehead & McCoy by C.R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Judge.
In the employer's appeal of a judgment awarding worker's compensation benefits for total and permanent disability that arose after the employee experienced pain and dizziness while at work and a heart attack 3½ months later, we face the difficult Adams issues of the causal links between the angina and the employment and between the angina and the disability. We affirm the trial court.
On his second day of work erecting forms for concrete in a deep excavation on a hot humid day, the 48-year-old employee, Walker, suffered an attack of dizziness, hereafter detailed, just before the end of his eight-hour working day on September 14, 1982. He resumed his work the next day and continued until September 29, 1982, when he was terminated for other reasons. He also sustained apparent attacks of angina on October 3, 7, 8, and 13, and began to seek medical attention on October 8. After by-pass surgery on October 18, Walker suffered a moderately severe heart attack to the frontal wall of his heart on December 26, 1982.

JURISPRUDENCE
Angina was concisely explained in Adams v. New Orleans Public Service Inc., 418 So.2d 485 (La.1982).
Generally speaking, angina pectoris is pain located in the chest area. It is usually caused by an insufficient supply of oxygen to the heart muscle. Arteriosclerosis is a condition marked by a loss of elasticity, thickening and hardening of the arteries. Angina pectoris is often associated with arteriosclerosis because the thickening of the arteries results in a reduction of the blood supply to the heart which in turn causes pain or angina.
418 at p. 486. Footnotes omitted.
In Adams, a mechanic, hired three months previously, began suffering shortness of breath and chest pains at work. Adams told his wife about the dizziness and nausea when she picked him up from work, attributing this episode to indigestion and exhaustion. Two weeks later while at work Adams again experienced chest pains, nausea, profuse sweating, and a heavy smothering sensation. He told a co-worker he felt as if he had indigestion and "was feeling real bad."
Adams then went home, told his wife of his symptoms, and was persuaded to see a *1248 doctor the next day. An EKG, chest X-rays, blood tests and stress tests showed normal results. The treating physician diagnosed angina pectoris caused by arteriosclerosis and advised Adams not to perform hard physical labor.
With three dissents, the supreme court found that Adams was entitled to worker's compensation benefits.
Schneider v. Strahan, 449 So.2d 1338 (La.1984), is also pertinent. There a painter also suffered a "dizzy spell" at work on Wednesday. He worked the remainder of the week without incident before suffering severe chest pains (diagnosed later as a "coronary insufficiency") on Saturday while eating breakfast at home. Schneider was hospitalized for almost a week and was diagnosed as having arteriosclerosis. Tests revealed no coronary infarction. Two days after he was released he suffered a myocardial infarction and died. The trial court denied compensation and was affirmed.
Schneider emphasizes the weight to be afforded a trial court's determination of essential cause-in-fact relationships. In Schneider the supreme court noted that "If the trial court had awarded compensation, an appellate court may well have found that the medical and lay evidence, viewed in the light most favorable to the prevailing party, was sufficient to support the judgment." 449 So.2d at 1341.

DETAILED FACTS
Walker began working on September 13, 1982, as a carpenter's helper at defendant's construction site. He helped build and set wooden forms for concrete foundations in a large excavation pit.
Walker was a manual laborer most of his life. He was unemployed from November 1981 until hired by defendant in September 1982. He was a pack a day smoker until September 1982. His family had a history of heart disease.[1]
Walker said he experienced a dizzy spell about 4 p.m. on September 14, 1982, which he thought was the result of becoming overheated while working in the excavation in hot, humid weather. He rested at the job site and then went home at 4:30 p.m. Following the dizzy spell, he said he experienced numbness in his arms and pain between his shoulders each time he walked the ¼ mile to and from the excavation and the employees' parking area. The trial court found this incident of September 14, 1982, was the "most logical explanation" for Walker's eventual disability.
Walker's wife and mother-in-law testified about his appearance and his complaints on September 14, 1982, when he returned from work and about the occurrence of other angina attacks in the weeks following.[2] Walker did not call any co-workers to corroborate his testimony.[3] The testimony of a claimant may be accepted as satisfying the burden of proof under the worker's compensation law. Adams v. Travelers Ins. Co., 345 So.2d 987 (La.App. 2d Cir.1977).

MEDICAL
Compensation may be awarded when the death or disability occurs off the job after an on-the-job incident if there is medical correlation between the job duties, the incident and the resulting death or disability. Schneider, supra. The medical and lay testimony establishes that the on-the-job incident, the stress and *1249 strain, caused or contributed to Walker's disability which initially arose from angina [pain] and then from the heart attack.
Dr. Huckaby, a general practitioner who was Walker's regular physician, and Dr. Barnett, a Shreveport cardiologist, testified by deposition.
Dr. Huckaby said that Walker had been his patient for a number of years and that as far as he knew, Walker was in good health until Walker came to his office on October 8, 1982. Dr. Huckaby then diagnosed plaintiff as suffering from angina with impending cardiac infarction. Dr. Huckaby performed tests and referred plaintiff to Dr. Barnett.
Dr. Barnett saw Walker on October 13, 1982. Dr. Barnett said that Walker told him that he had had about six "bouts" of chest pain before October 13.[4]
Walker denied other cardiac symptoms to Dr. Barnett. Dr. Barnett felt that Walker's history and risk factors strongly suggested that the chest pain originated from the heart.
Dr. Barnett stated that Walker's physical examination and EKG on October 13, 1982, were normal. A stress test, however, showed that Walker was able to perform only four minutes of a 10½ minute exercise. The test was terminated because Walker demonstrated weakness, chest pain, and irregular heartbeat. This test showed that Walker had physical limitations. An EKG made during the stress test suggested ischemia (inadequate blood supply to the heart).
Dr. Barnett believed plaintiff had arthro-sclerotic heart disease, anginal syndrome, irregularity of the heart (a nodal tachycardia), and premature nodal beats. The doctor explained that arthrosclerosis results from deposits of fat in coronary arteries which obstruct the vessels and cause an inadequate supply of blood to the heart tissue.[5] The doctor explained that arthrosclerosis usually develops over many years, and that it can be caused by smoking, by genetic predisposition to the disease, by high cholesterol, hypertension, and perhaps high triglycerides. Dr. Barnett said that Walker's tachycardia was caused by the arthrosclerosis.
A heart catherization on October 14, 1982, showed that the anterior descending branch of the left coronary artery, and the first diagonal branch of the left coronary artery were totally obstructed by fatty deposits which had built up over a number of years. Walker underwent a bypass operation on October 18, 1982. Recovery was normal and Walker was discharged October 23, 1982, with no indication of heart damage or heart attack. Walker was asymptomatic when seen by Dr. Barnett on October 29, 1982.
Dr. Barnett hospitalized Walker on November 8, 1982, because of weakness, although Walker was not complaining of chest pain. Dr. Barnett said that Walker had an irregular heart beat which could be life-threatening if it continued or deteriorated into ventricular fibrillation (an irregularity not compatible with life). A gaited blood scan showed that Walker had not had a "silent" heart attack.
*1250 Walker repeated a stress test and had a thallium scan. Walker performed 8 minutes of a predicted 10.7 minutes of exercise with moderate shortness of breath and fatigue. He also experienced some chest and shoulder pain. The scan showed ischemia (inadequate blood supply to the heart), which indicated that the arteries again were obstructed. Dr. Barnett thought an early graft closure was probable. Walker was treated with medication and discharged.
Walker returned to Dr. Barnett on December 8, 1982. He was then short of breath, but did not exhibit angina, and his heart rhythm had stabilized.
On December 26, 1982, Walker was admitted to Schumpert Hospital with pain between the shoulder blades. He was shown to have suffered a front wall heart attack of moderate size. Walker was restudied January 3, 1983. Both grafts were obstructed with blood clots and damage was found on the front wall and tip of his heart. Dr. Barnett agreed that Walker's heart attack resulted from the persistent and decreased blood supply to the heart.
Dr. Barnett stated that when he last saw Walker on September 6, 1983, he reported only one or two bouts of chest pain during the preceding three months. Dr. Barnett expected Walker to be fatigued and short of breath because of his poor heart function.
Dr. Barnett agreed that Walker was a "prime candidate" for a heart attack before the bypass surgery. He agreed that
... the effect of physical exertion in this particular individual would be aggravating to the condition that he had...
Stress with his low level of physical exercise tolerance probably would disable him
...
There has been much in the literature as regards to stress in its effect on the heart, the cause and effect of stress, actually provoking the formation of the plaque itself is unclear, but if you look at all coronary risk factors to include cholesterol, cigarette smoking, the debate has not ended on these risk factors either. Stress does aggravate the existing disease present and I think this has been established. I cannot say which of his risk factors caused his particular development of disease since he had several [risk factors]. Stress would be an aggravating agent on an already-existing coronary disease.
Brackets supplied.

CONCLUSION
Walker, unlike Adams, had a heart attack following the initial onset of angina 3½ months before. Walker, like Adams, became disabled from angina within about two weeks after its onset. The issues, as stated in Adams, concern the causal relationship between Walker's employment and the angina and the causal relationship between the angina incident on the job and the disability.
As in Adams, these issues are answered in favor of the employee. The initial sudden onset of angina occurred on the job. It is irrelevant whether this "accident" might have occurred elsewhere. 418 So.2d at 488. See also Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119, 122-123 (La.1982). Similarly, the initial attack was shortly followed by other attacks even though off the job, by the by-pass surgery, and then by the heart attack. Walker was disabled within the meaning of the worker's compensation law at least by October 8, 1982, when Dr. Barnett first saw him. The employer does not contest the conclusion of total and permanent disability, but contends that the disability was not caused by the on-the-job incident, even if it occurred as Walker said. The trial court's conclusions regarding the causal relationships are supported by the record and are not clearly wrong, or manifestly erroneous.
At appellant's cost, the judgment is AFFIRMED.
NOTES
[1] Testimony indicates that plaintiff's father died suddenly at age 68, as did his mother. His brother died suddenly at 41. Two of his brothers have had heart surgery. Another brother had a mild heart attack but has not had surgery. A sister has had two heart attacks.
[2] Walker said he got hot and dizzy and from "then on," when walking between the job site and his vehicle, his arms would get numb and he would experience pain between his shoulders. Walker's mother-in-law said he looked pale, "not ... like himself," and that he said he almost didn't make it home and was complaining of hurting in his arms and chest.
[3] One co-worker mentioned by Walker said he just did not remember Walker having a dizzy spell.
[4] Walker told Dr. Barnett that the first episode of pain occurred about three weeks prior to October 13 when Walker was running after his nephew; that the second and third bouts were minor and occurred while Walker was working; that the fourth episode was around October 7, in the evening while he was watching TV; and that the other two bouts occurred while Walker was at the Huckaby Clinic. The record establishes Walker did not work after September 29, 1982. Walker said that Dr. Barnett was wrong and that he "plainly told him about the deal that happened out there [on the job], [the chase of the nephew] was the second time."
[5] Dr. Barnett explained that arteriosclerosis in lay terms in synonymous with arthrosclerosis. The medical difference is that the restriction in arteriosclerosis is caused by a hardening of the blood vessel, while in arthrosclerosis the restriction is caused by fatty deposits in the blood vessel. Dr. Barnett agreed that the anginal syndrome is pain in the heart which results from reduced blood flow and that Walker "had a pressure chest discomfort which was compatible with angina ..."