478 So.2d 752 (1985)
Robert Larry LUNEAU, Plaintiff-Appellee,
v.
The HANOVER INSURANCE COMPANY, et al., Defendants-Appellants.
No. 84-852.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
*754 J. Edward Knoll, Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, Larry A. Stewart, Alexandria, for defendants-appellees.
Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Sam N. Poole, Jr., Alexandria, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
Robert L. Luneau brought this worker's compensation action to recover disability benefits, penalties and attorney's fees from defendant, The Hanover Insurance Company (Hanover),the worker's compensation insurer of Robert Luneau's former employer, Luneau's Mobile Homes, Inc. (hereafter Luneau's)[1]. Following Robert's death, his widow, Glenda Dunlap Luneau, individually and as Administratrix of the estates of her three minor children, was substituted as plaintiff in this action. The petition was thereafter amended to include a demand for worker's compensation death benefits. Ed's Manufactured Housing, Inc. (Ed's) and Travelers Insurance Company (Travelers) intervened in the suit, seeking contribution from Luneau's and Hanover for onehalf of all worker's compensation benefits paid by them to or on behalf of Robert Luneau.
Following a trial on the merits, judgment was rendered in favor of plaintiff and against Luneau's and Hanover for partial disability benefits for the period from April 26, 1981 to December 1, 1981. Also, Luneau's, Hanover, Ed's and Travelers were found solidarily liable for worker's compensation death benefits beginning November 29, 1982. Finally, judgment was rendered in favor of intervenors, Ed's and Travelers, and against Luneau's and Hanover for contribution for one-half (½) of all death benefits paid and to be paid by intervenors. The trial court denied plaintiff's claims against Hanover for penalties and attorney's fees.
Plaintiff appeals devolutively from the trial court judgment raising the following issues:
1. Whether the trial court erred in making a "closed award" of worker's compensation benefits for the period April 26, 1981 to December 1, 1981 at the rate of $163.00 per week against Luneau's and Hanover, in lieu of an award of maximum benefits for the period April 26, 1981 to the date of his death on November 29, 1982; and,
2. Whether the trial court erred in failing to find Hanover arbitrary and capricious in its refusal to pay Robert Luneau worker's compensation benefits.
Defendant, Hanover, answered the appeal raising the following issues:[2]
1. Whether the trial court erred in finding that Robert Luneau's heart attack of April 26, 1981 occurred during the course and scope of his employment with Luneau's; and,
2. Whether the trial court erred in finding that Robert Luneau's fatal heart attack of November 29, 1982 was contributed to by his first heart attack of April 26, 1981.
Luneau's, Ed's and Travelers have neither appealed from the trial court's judgment nor answered plaintiff's appeal.

FACTS
Robert Luneau, 41 years old, was employed by Luneau's as lot manager at its Crowley location. He started working for Luneau's in 1978. His duties as lot manager included taking care of all sales and service problems, buying mobile homes for *755 the lot, keeping up the insurance, handling all complaints, and arranging credit for potential buyers. As lot manager, Robert was required to live on the lot in a mobile home. His wife and three children lived in Effie at the time and saw him on weekends. The lot was open for business from 8:00 a.m. until 8:00 p.m. six days a week, and on Sundays from 1:00 p.m. until 7:00 p.m. Robert testified in deposition that he continued to receive phone calls from customers after hours since the business phone also rang in his trailer on the lot.
On Wednesday, April 22, 1981, Robert experienced dizziness, weakness and a tightness in his chest while working at the sales lot. He tried to get a doctor's appointment in Crowley but was unable to arrange one. He then called his wife in Effie and asked her to make an appointment for him with Dr. Richard Michel, his physician, in Marksville. Mrs. Luneau arranged an appointment with Dr. Michel for the following day. Robert notified his wife on Thursday that he would be unable to keep the appointment with Dr. Michel because of the press business at the lot. He asked that she make an appointment for him for the following day. Because Dr. Michel's office was closed on Friday, April 24, 1981, Mrs. Luneau arranged an appointment for her husband for Monday, April 27, 1981.
Robert worked in varying degrees of pain and discomfort on Wednesday, Thursday and Friday. After closing at around 7:00 p.m. Friday night, he drove home to Effie. He felt bad on Saturday and, according to his deposition testimony, just laid around the house all day. He was awakened early Sunday morning, April 26, 1981, with sharp pains in his chest. He immediately went to Marksville General Hospital where he was treated by Dr. Michel and diagnosed as having suffered an acute myocardial infarction (heart attack). He remained hospitalized until May 7, 1981.
Robert returned to work at Luneau's several weeks after his heart attack. He testified that upon his return he felt weak and had to rest on and off during the work day. He claimed that the pressure from his job caused him pain in his chest and forced him to take nitroglycerine tablets to relieve the pain.
On June 15, 1981, Robert was examined by Dr. Louis L. Leatherman, a specialist in internal medicine in Houston, Texas. Dr. Leatherman performed a left heart catheterization on Robert and found that he had impressive triple vessel disease. Dr. Leatherman did not feel that bypass surgery was warranted at that time but did recommend a continued course of medical management. Dr. Leatherman also encouraged Robert to quit smoking, lose about 15 pounds and become actively involved in a walking program.
Robert returned to work at Luneau's following his trip to Houston. He was unable to perform all of the duties that he had done prior to his attack and relied on the help of his co-workers. He could only walk short distances at a time and had to rest between sales. On September 24, 1981, Robert was taken to the emergency room at the Crowley American Legion Hospital as a result of chest pains and dizziness. He was then transferred by ambulance, against the hospital's advice, to Marksville General Hospital where he was examined by Dr. Michel. He remained in intensive care for three days and was thereafter released on bed rest. Dr. Michel testified that Robert did not suffer a true infarction at this time, but that he just had some angina.
Robert ceased working for Luneau's in October of 1981, allegedly due to conflicts between himself and his boss, A.T. Luneau. Robert then obtained employment with Ed's Manufactured Housing, Inc. in Alexandria, in December of 1981 as a salesman. Mrs. Luneau assisted her husband in his duties at Ed's, since Robert was unable to do much walking. Robert testified that he was under considerably less pressure at Ed's than he was at Luneau's, since he no longer was responsible for the managerial aspects of the job.
Following three unanswered demand letters to Hanover, Robert filed suit on February *756 9, 1982, seeking worker's compensation benefits. Robert's petition alleged that he was totally and permanently disabled as a result of his April 1981 heart attack, or alternatively, that he was temporarily totally disabled. He also sought penalties and attorney's fees due to Hanover's alleged arbitrary and capricious denial of benefits.
Hanover answered the petition, alleging that plaintiff was not entitled to worker's compensation benefits since the April 1981 heart attack occurred while Robert was asleep at home and not "in the course and scope of his employment".
On October 7, 1982, while on the job at Ed's, Robert suffered another heart attack. He was hospitalized at Marksville General Hospital for approximately ten days. He was diagnosed as having an acute myocardial infarction, arteriosclerotic heart disease and diabetes mellitus. He spent another week of rest at home before resuming his duties at Ed's. Upon his return to Ed's, Robert was only able to work half days. Dr. Michel examined Robert on November 1st and 15th and found him to be doing all right. Robert was advised to increase his activity.
On November 25, 1982, Robert was readmitted to Marksville General Hospital with another myocardial infarction. After developing severe complications, Robert died on November 29, 1982. Travelers has paid the maximum death benefits allowed by law since Robert's death.
Trial on the merits was held on July 22, 1983. The trial judge made the following findings of fact in his written reasons for judgment:
1. Robert's job at Luneau's caused him great stress which ultimately resulted in a myocardial infarction which occurred on April 26, 1981 at his home in Avoyelles Parish;
2. The heart attack of April 26, 1981 was work-related and caused by his employment with Luneau's;
3. Robert was forced to resign from employment with Luneau's because the pressure from his employment caused him to experience extreme chest pains;
4. Robert's earnings following his employment with Ed's exceeded his earnings while employed at Luneau's;
5. Robert's fatal heart attack of November 29, 1982[3] was contributed to by his first heart attack of April 26, 1981;
6. Travelers Insurance Company is presently paying the maximum death benefits allowed by law; and,
7. Hanover was not arbitrary and capricious in the handling of this matter.
In accordance with these findings of fact, judgment was signed on October 11, 1983, providing the following:

"...
1. That there be and is judgment herein in favor of plaintiff, GLENDA DUNLAP LUNEAU, individually and as Administratrix of the estate of her minor children, Bridgett Leigh Luneau, Robert Todd Luneau and Trenton Lee Luneau, and against the defendants, LUNEAU'S MOBILE HOMES, INC., and THE HANOVER INSURANCE COMPANY, for partial disability from April 26, 1981 until December 1, 1981 at the rate of One Hundred Sixty-three and NO/100 ($163.00) Dollars per week for a period of thirty (30) weeks with legal interest thereon from date of judicial demand until paid, plus all medical expenses including medical-travel expenses up to the statutory limit with credit for any workman's compensation benefits paid to Robert Larry Luneau.
2. That there be and is judgment herein in favor of intervenors, ED'S MANUFACTURED HOUSING, INC., and TRAVELERS INSURANCE COMPANY, and against the defendants, LUNEAU'S MOBILE HOMES, INC., and THE HANOVER INSURANCE COMPANY, decreeing that the April 26, 1981 heart attack contributed to the final and fatal *757 heart attack of November 29, 1982 which resulted in the death of ROBERT LARRY LUNEAU.
3. That there be and is judgment herein in favor of plaintiff, GLENDA DUNLAP LUNEAU, individually and as Administratrix of the estate of her minor children, Bridgett Leigh Luneau, Robert Todd Luneau and Trenton Lee Luneau, and against the defendants, LUNEAU'S MOBILE HOMES, INC., and its insurer, THE HANOVER INSURANCE COMPANY, and ED'S MANUFACTURED HOUSING, INC., and its insurer, TRAVELERS INSURANCE COMPANY, in solido, awarding Glenda Dunlap Luneau and her dependent children, the maximum death benefits from November 29, 1982 with credit for death benefits previously paid.
4. That intervenor, TRAVELERS INSURANCE COMPANY, be and it is entitled to contribution from THE HANOVER INSURANCE COMPANY, in the amount of one-half (½) of all death benefits paid by Travelers Insurance Company to the dependents of Robert Larry Luneau.
5. That the defendants, LUNEAU'S MOBILE HOMES, INC., and THE HANOVER INSURANCE COMPANY, is found not to be arbitrary or capricious in the handling of this matter.
6. The expert witness fees are fixed at One Hundred Fifty and NO/100 ($150.00) Dollars per courtroom appearance and Seventy-five and NO/100 ($75.00) Dollars per deposition appearance. All such fees together with the court reporters' deposition charges are to be taxed as costs of this proceeding and the defendants, LUNEAU'S MOBILE HOMES, INC., and its insurer, THE HANOVER INSURANCE COMPANY, are cast with all costs of this proceeding...."
Following judgment, Travelers motioned for a new trial on the ground that the trial court erred in rendering judgment in favor of plaintiff and against it and Ed's, since no claim had ever been made against them by plaintiff. Plaintiff, Mrs. Luneau, also moved for a new trial. The trial court denied both motions for new trial on November 11, 1983.
Plaintiff thereafter appealed. Hanover and Luneau's also appealed, but such appeal was subsequently dismissed by order of the trial court as abandoned on motion of the court reporter for the Twelfth Judicial District Court. (La.C.C.P. Art. 2126(E)). Hanover thereafter timely answered plaintiff's appeal.

RENDITION OF JUDGMENT BY THE TRIAL COURT IN FAVOR OF THE PLAINTIFF AGAINST LUNEAU'S MOBILE HOMES, INC., ED'S AND TRAVELERS INSURANCE COMPANY
As heretofore mentioned, the trial court rendered judgment in favor of plaintiff, individually and on behalf of her dependent children, against Luneau's and Hanover for partial disability from April 26, 1981 until December 1, 1981 and also judgment against Luneau's, Ed's and its insurer, Travelers, along with Hanover, in solido, awarding plaintiff and her dependent children the maximum worker's compensation death benefits from November 29, 1982.
The record on its face clearly reflects that plaintiff did not sue and did not name as defendants Luneau's, Ed's and Travelers and is, therefore, not entitled to judgment against these parties. In our view, a judgment rendered against a party who is not named as a defendant is absolutely void. Tracy v. Dufrene, 121 So.2d 843 (La.1960), on remand, 146 So.2d 678 (La.App.4th Cir.1962), writ denied Jan. 14, 1983; Edwins v. Lilly, 422 So.2d 1217 (La. App.1st Cir.1982), writs denied, 426 So.2d 178 (La.1983), 426 So.2d 180 (La.1983); Kling v. Collins, 407 So.2d 478 (La.App.1st Cir.1981). Although Luneau's, Ed's and Travelers have not appealed nor answered the appeal of plaintiff, we recognize the absolute nullity of this judgment insofar as it improperly casts these parties in judgment. King v. Collins, supra. We will amend the trial court judgment accordingly.

*758 DID ROBERT LUNEAU'S APRIL 26, 1981 HEART ATTACK ARISE OUT OF AND IN THE COURSE OF HIS EMPLOYMENT?
Louisiana's Worker's Compensation Act, La.R.S. 23:1021 et seq., sets forth the requirements for a successful claim for worker's compensation as follows:
"If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated..." (Emphasis ours).
It is well established that a myocardial infarction, is an "injury by accident" within the contemplation of the Worker's Compensation Act. Barnes v. City of New Orleans, 322 So.2d 821 (La.App.4th Cir. 1975), writ denied, 325 So.2d 584 (La.1976); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Schneider v. Strahan, 422 So.2d 1377 (La.App.1st Cir.1982), affirmed, 449 So.2d 1338 (La.1984).
The requirement that the accident "arise out of the employment" contemplates that the accident resulted from some risk to which the employee was subjected in the course of his employment and to which he would not have been subjected had he not been so employed. That risk must be one greater than that occasioned by a person not engaged in the employment. Guidry, supra. The Supreme Court in Guidry, set forth the following analysis for the "arising out of" issue in heart attack cases:
"... For the heart accident to arise out of or be connected with the employment, the exertion stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life15 (e.g., as compared to the more or less sedentary life of the average non-worker)."
Although our case does not clearly involve a pre-existing disease affecting the heart, the inquiry remains the same.
We must therefore determine whether plaintiff has carried her burden of proving that the physical or emotional stress which Robert Luneau suffered from was a risk which he encountered in the course of his employment at Luneau's Mobile Homes, ultimately causing his heart attack on April 26, 1981.
In the present case, the record is replete with testimony of the emotional stress that Robert was under as manager of Luneau's Mobile Homes. He was in charge of all of the paperwork, records, payroll and financial dealings of the company. He had to personally handle all complaints which came in to the office, including after-hour calls which were forwarded to the trailer in which he lived on Luneau's lot. Added to the pressures and responsibilities of his position at Luneau's were the added problems which Robert had with his boss, A.T. Luneau. Trial testimony and Robert's deposition testimony confirm that A.T. Luneau, the owner of Luneau's, was not an easy man to work for or to satisfy. A.T. Luneau would sometimes show up at Robert Luneau's trailer at 4:00 a.m. to discuss business operations. Dr. Michel further testified that Robert often complained of the pressures he was experiencing at work and how A.T. Luneau demanded so much from him and he was never able to please him.
The sole medical evidence supporting a determination that the stress which Robert experienced at work could have caused or contributed to his heart attack of April 26, 1981 was that of Dr. Michel. The record contains two depositions of Dr. Michel, as well as his trial testimony. Dr. Michel noted the following medically recognized risk factors which lead to coronary artery disease:
1. hypertension
2. obesity
3. smoking
4. family history of heart problems
5. diabetes, and
6. cholesterol
Of these factors, Dr. Michel stated that all were present in Robert prior to his first *759 heart attack. Dr. Michel also noted that, although not based on proven medical literature but on his own experience with heart patients, stress is a contributing factor to heart attacks. When asked if the tension from his job brought about Robert's April 26, 1981 heart attack, Dr. Michel responded, "I can't answer you that. If I could answer you what gives heart attacks, we could keep everybody from having them. But tension does play a part in it ..." Dr. Michel went on to state that stress does play a great part in contributing to heart attacks.
Based upon Dr. Michel's testimony and the fact that there was no evidence to rebut his opinion that the stress from Robert's employment contributed to his heart attack, the trial court found sufficient correlation between Robert's employment activities and his April 26, 1981 heart attack. We find no clear error in the trial judge's conclusion in this respect.
Having found that the heart attack did arise out of Robert's employment with Luneau's, we must next consider the second prong of the analysis, i.e., whether the heart attack occurred during "the course of his employment". This requirement focuses upon the place and time during which the accident occurred and what the employee was doing when he was injured. It is this requirement which causes us great difficulty.
As was mentioned earlier, Robert first exhibited symptoms of pain, dizziness and tightness in his chest while at work on Wednesday, April 22, 1981. Being unable to obtain an appointment with a doctor until the following Monday, and, although still suffering with chest pains, Robert continued working Wednesday, Thursday and Friday. He returned to his home in Avoyelles Parish Friday evening and rested all day on Saturday, still suffering with chest pains. Robert continued feeling bad until the occurrence of his heart attack early Sunday morning while he was asleep at home.
Our jurisprudence has recognized that compensation may be awarded when the death or disability occurs off the job after an on-the-job incident if there is medical correlation between the job duties, the incident and the resulting death or disability. Walker v. Austin Power Company, 467 So.2d 1246 (La.App.2d Cir.1985), writ denied, 469 So.2d 987 (La.1985); Schneider, supra; Barnes, supra.
In Walker, our learned brethren of the Second Circuit affirmed an award of worker's compensation benefits to an employee who experienced pain and dizziness while at work and a heart attack 3½ months later. That court found that the medical and lay testimony presented in that case established that the on-the-job incident, the stress and strain, caused or contributed to the plaintiff's disability which initially arose from angina (pain) and then from the heart attack. Dr. Barnett, a cardiologist who examined the plaintiff, opined that:
"There has been much in the literature as regards to stress in its effect on the heart, the cause and effect of stress, actually provoking the formation of the plaque itself is unclear, but if you look at all coronary risk factors to include cholesterol, cigarette smoking, the debate has not ended on these risk factors either. Stress does aggravate the existing disease present and I think this has been established. I cannot say which of his risk factors caused his particular development of disease since he had several [risk factors]. Stress would be an aggravating agent on an already-existing coronary disease."
Brackets supplied.
As in the instant case, the medical opinion regarding the relation between job stress and the ultimate heart attack of the employee was uncontradicted.
Another factually similar case is that of Barnes v. City of New Orleans, supra. In Barnes, the employee experienced chest pains while at work. His illness was apparent to his co-workers and he left work early that day. He died that night in his sleep. The Fourth Circuit Court of Appeal affirmed the trial court's award of worker's *760 compensation benefits, concluding that the medical testimony established that the work caused or contributed to the fatal infarction. The court affirmed the trial court's finding that "the evidence is amply sufficient and in fact overwhelming that indeed something occurred on the job, whether it was an infarction or ... a development of an infarction, or ... an additional insufficiency of oxygen supplied to the heart or something related to the heart, which was at the very least a further deterioration of his heart condition."
In Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981), the Louisiana Supreme Court reversed the district court and Court of Appeal's denial of worker's compensation benefits to an employee who had experienced several attacks of angina pectoris while at work. The employee was subsequently diagnosed as having suffered the angina due to arteriosclerosis. The court in Adams rejected the Court of Appeal's argument that the plaintiff could not recover because no incident or series of incidents during plaintiff's employment caused the arteriosclerosis or the episodes of angina pectoris. The Supreme Court stated:
"... Where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. When dealing with a claim for workmen's compensation, we have repeatedly stated that it is irrelevant whether the accident might have occurred at another place and at another time. The only pertinent inquiry is whether in fact, the accident happened on the job...."
The medical evidence in Adams established that, although the plaintiff suffered from arteriosclerosis, he had never exhibited any disabling symptoms. It was not until the attacks of angina on the job that the plaintiff was limited in the type of work that he could do. The plaintiff therefore established the necessary causal link between the accident and the disability.
In the present case, the accident occurred when Robert began experiencing pain on Wednesday, April 22, 1981, which continued, in varying degrees, uninterrupted, until the heart attack on Sunday, caused disability.
Another case of importance in our determination is that of Schneider v. Strahan, supra. In Schneider, the trial court found no causal connection between the plaintiff's work activities and his fatal heart attack. The Court of Appeal and the Supreme Court affirmed the trial court's denial of worker's compensation benefits. The plaintiff in Schneider was a painting contractor with both supervisory and manual duties. Plaintiff became "flustered" at work while holding up a ladder. After a short rest, he returned to his duties and worked for the remainder of the day. He also worked the next two days without displaying any further symptoms.[4] He was admitted to the hospital the next day (Saturday) with chest pains and remained hospitalized for six days. His condition was diagnosed as coronary insufficiency. Upon his release, he returned to the work site to supervise certain projects for about two hours on Friday and on Saturday. He was rushed to the hospital early Monday morning where he later died of an acute myocardial infarction. The importance of Schneider to the present case was succinctly pointed out by our learned brethren of the Second Circuit in Walker, supra:

"Schneider emphasizes the weight to be afforded a trial court's determination of essential cause-in-fact relationships. In Schneider the supreme court noted that "If the trial court had awarded compensation, an appellate court may well have found that the medical and lay evidence, viewed in the light most favorable to the prevailing party, was sufficient to support the judgment." 449 So.2d at 1341.
*761 In light of the above jurisprudence and the medical evidence presented at trial, we do not find clear error in the trial court's holding that Robert's heart attack of April 26, 1981 arose out of and in the course of his employment at Luneau's.
We recognize that recently a different panel of this court, faced with somewhat similar circumstances, affirmed a trial court's denial of benefits to the plaintiff. We believe that case and the instant case are distinguishable. In King v. Wilson Brothers Drilling Co., Inc., 441 So.2d 68 (La.App.3rd Cir.1983), writ denied, 443 So.2d 598 (La.1983), the plaintiff-employee was a driller, basically in charge of maintaining the operations on an oil rig. On Friday, King's crew was short two men and King was unable to find replacements for them. Because one of the crew had been injured on the job, plaintiff also lost a safety award. King worked the Saturday night shift and returned home on Sunday morning. King spent time on Sunday trying to find the necessary crew replacements but was unable to do so. He retired to bed at around 10:30 p.m. Sunday night concerned about losing his job because he had failed to replace the missing crew members. Shortly after midnight, King was awakened with severe chest pains, later diagnosed as a myocardial infarction.
The testimony in King indicated that King had felt ill and suffered with chest pains during the last four days at work. This pain was diagnosed as symptoms of angina pectoris. The trial court denied compensation benefits. In affirming the trial court's decision, this court stated:
"Our review reveals that the severe heart attack occurred while King was at home and asleep, eighteen hours after his last shift and only six hours before his next duty was to begin. Within any construction of the law, clearly, King was not "in the course of" his employment when the seizure occurred.
. . . . .
the precise occasion when King was stricken was substantially removed from those duties in both time and place. The heart attack did not occur at a time or place contemplated by the characteristics of the employment. In other words, it is not reasonably forseeable that a "driller" will sustain work related injuries consistent with the normal occupational risks involved in drilling, at midnight while home asleep."
At first glance, our language in King would seem to dictate a reversal in the instant case since Robert's heart attack also occurred while he was asleep at home over 24 hours after he left his job at Luneau's. However, the distinguishing factor between the two cases lies in the medical testimony. In King, Dr. J. T. Thomas diagnosed the plaintiff's chest pains as symptoms of angina pectoris, a pre-existing heart condition. The expert testimony established that "the pains are considered as symptoms of a condition, rather than indications of muscle destruction as with a heart attack." The court then found that plaintiff had failed to show that the angina was causally linked or related to his employment. In the present case, the unequivocal medical testimony was that the pains suffered by Robert at work on Wednesday, Thursday, Friday and continuing until his heart attack on Sundary morning were caused or contributed to by the stress which he was subjected to at work. Without such supporting testimony, we no doubt would have decided as this court did in King. Additionally, in King, we viewed the evidence in a light most favorable to the defendant and affirmed the trial court's determination that plaintiff's heart accident did not occur during the course and scope of his employment.
The Supreme Court reiterated the appropriate standard of review in Ducote v. J. A. Jones Construction Co., 471 So.2d 704 (La. 1985):
"On appellate review, the trial court's factual findings in workmen's compensation cases are entitled to great weight. Crump v. Hartford Accident and Indemnity, 367 So.2d 300 (La.1979). Reasonable evaluation of credibility and reasonable inferences of fact should not be *762 disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. This is because of the trial court's better capacity to evaluate live witnesses as compared with the appellate court's access to only a cold record. Cadiere v. West Gibson Products Co., 364 So.2d 998 (La.1978)."
After viewing the testimony in a light most favorable to the plaintiff, we find that the trial court's decision was sufficiently supported by the evidence presented. We therefore affirm the trial court's finding that Robert's April 26, 1981 heart attack was job-related and his dependents are therefore entitled to worker's compensation benefits accordingly.

DID THE TRIAL COURT PROPERLY AWARD BENEFITS ENDING ON DECEMBER 1, 1981 AT THE RATE OF $163.00 PER WEEK?
Plaintiff-appellant's first assignment of error is that the trial court erred in making a "closed award" of compensation benefits until December 1, 1981 at the rate of $163.00 per week. We find no merit in this assignment of error.
The trial court rendered judgment in favor of plaintiff for Robert's partial disability resulting from his April 26, 1981 heart attack. The benefits were fixed at a rate of $163.00 per week to run from April 26, 1981 (the date of the "accident") until December 1, 1981 (the date that Robert became employed at Ed's).
Appellant does not dispute correctness of the award for the time period of April 26, 1981 until September 24, 1981, but asserts that she is then entitled to benefits of $183.00 per week from September 24, 1981 until October 7, 1982, and benefits of $204.00 per week from October 7, 1982 to the date of Robert's death.
Appellant seeks a higher rate of partial disability benefits from September 24, 1981 until the date of Robert's death, asserting that Robert's annual earnings were reduced from approximately $50,000.00 at Luneau's to $32,134.33 when he went to work at Ed's in 1982. We find nothing in the record to substantiate the assertion that Robert made $50,000.00 per year at Luneau's. In fact, the record indicates that in 1981, according to his 1981 Federal Income Tax Return, Robert earned approximately $36,000.00. In his written reasons for judgment, the trial judge found that Robert's earnings were in fact less at Luneau's than at Ed's. Since the record is not clear as to Robert's actual earnings at either place of employment, we cannot find that the trial court was clearly wrong in its award of partial disability benefits. We therefore affirm that part of the judgment.

PENALTIES AND ATTORNEY'S FEES
Plaintiff next argues that the trial court erred in denying its claim for penalties and attorney's fees against Hanover. Plaintiff contends that, in light of the demands made upon Hanover by letters dated November 11, 1981, December 30, 1981 and January 1, 1982, Hanover was arbitrary and capricious in refusing to pay worker's compensation benefits to plaintiff.
The issue of whether the refusal by Hanover to pay compensation benefits was arbitrary and capricious is a factual determination which must be decided upon the facts presented. Hanover contends that there was a bona fide dispute as to whether the April 26, 1981 heart attack was causally related to Robert's employment with Luneau's. We agree. The various courts of this state continue to have great difficulty in deciding heart attack cases, as evidenced by the decisions in Barnes, Guidry, Schneider, Walker, Adams, and King, supra. We acknowledge the difficulty which we encountered in deciding the issue in this case. Accordingly, we conclude that Hanover was not arbitrary and capricious in its handling of the matter. We therefore affirm the trial court's denial of penalties and attorney's fees.

DID ROBERT'S APRIL 26, 1981 HEART ATTACK CONTRIBUTE TO HIS FATAL HEART ATTACK OF NOVEMBER 25, 1982?
Hanover urges by answer to plaintiff's appeal that the trial court erred in holding *763 that the April 26, 1981 heart attack contributed to Robert's fatal heart attack of November 25, 1982. Thus, Hanover argues that the trial court's judgment is erroneous insofar as it casts Hanover in judgment to plaintiff for worker's compensation death benefits and is also in error insofar as it awards intervenors, Ed's and Travelers, judgment over against Luneau's and Hanover, for one-half (½) of all worker's compensation death benefits paid and to be paid by Travelers to plaintiff.
At the outset, we observe that this issue is viable only as between plaintiff and Hanover. This issue, as between Ed's, Travelers, Luneau's and Hanover, has been set at rest by the judgment of the trial court which, as concerns the aforesaid parties, is now final. The record reflects that Traveler's and Ed's did not appeal or answer plaintiff's appeal. Hanover's and Luneau's appeal from the trial court judgment was dismissed as abandoned. Hanover and Luneau's do not question validity of the trial court judgment which dismissed their appeal. Therefore, Hanover's posture in this court is as appellee, with a timely filed answer to the plaintiff's appeal. It is well settled that an appellee, in answer to an appeal, may have the judgment appealed from modified or revised only as between himself and the appellant. La.C.C.P. Art. 2133; Mitchell Brothers v. Dinvaut, 374 So.2d 199 (La.App.4th Cir.1979), writ denied, 376 So.2d 1271 (La.1979); Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976). In Shelton, supra, the court, in discussing the effect of La.C.C.P. Art. 2133, stated:
"The article does provide that by answering an appeal, an appellee, without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of the appellant. It does not, however, give to an answer the effect of an appeal with respect to any portion of the judgment rendered against him in favor of a party not an appellant. See Shaw v. Travelers Insurance Co., 293 So.2d 568 (La.App.3rd Cir.), writ denied, 295 So.2d 815 (La.1974); Advertiser, Division of the Independent Inc. v. Tubbs, 208 So.2d 340 (La.App.3rd Cir.1968)."
We find merit in Hanover's contention. There is no evidence in the record, lay or medical, which supports the trial court's conclusion that Robert's April 26, 1981 heart attack contributed to his fatal heart attack of November 25, 1982. To the contrary, all of the medical evidence presented supports the conclusion that there was no connexity between the two attacks. Dr. Fernando Garcia, a cardiologist, reviewed the EKGs taken during Robert's several hospitalizations and testified that the fatal heart attack was confined to a completely different area of the heart from that affected by the first attack. Dr. Michel, Robert's treating physician for all three heart attacks, candidly testified that there was absolutely no connexity between the attack of April 26, 1981 and the fatal attack of November 25, 1982. We therefore conclude that the trial court clearly erred when it held that the earlier heart attack contributed to the later attack and, accordingly, cast Hanover in judgment in favor of plaintiff for worker's compensation death benefits. However, our decision in this regard will provide little solace to Hanover considering finality of the judgment in favor of Ed's and Travelers.
For the above and foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED:
1. That there be and is judgment herein in favor of plaintiff, GLENDA DUNLAP LUNEAU, individually and as Administratrix of the estates of her minor children, Bridgett Leigh Luneau, Robert Todd Luneau and Trenton Lee Luneau, and against the defendant, THE HANOVER INSURANCE COMPANY, for partial disability from April 26, 1981 until December 1, 1981 at the rate of One Hundred Sixty-three and NO/100 ($163.00) Dollars per week for a period of thirty (30) weeks with legal interest *764 thereon from date of judicial demand until paid, plus all medical expenses including medical-travel expenses up to the statutory limit with credit for any workman's compensation benefits paid to Robert Larry Luneau.
2. That there be and is judgment herein in favor of intervenors, ED'S MANUFACTURED HOUSING, INC. and TRAVELERS INSURANCE COMPANY, and against the defendants, LUNEAU'S MOBILE HOMES, INC. and THE HANOVER INSURANCE COMPANY, decreeing that the April 26, 1981 heart attack contributed to the final and fatal heart attack of November 29, 1982 which resulted in the death of ROBERT LARRY LUNEAU.
3. That intervenors, TRAVELERS INSURANCE COMPANY and ED'S MANUFACTURED HOUSING, INC., be and they are entitled to contribution from THE HANOVER INSURANCE COMPANY and LUNEAU'S MOBILE HOMES, INC. in the amount of one-half (½) of all worker's compensation death benefits paid by intervenors to the dependents of Robert Larry Luneau.
4. That the defendant, THE HANOVER INSURANCE COMPANY, is found not to be arbitrary or capricious in the handling of this matter.
5. The expert witness fees are fixed at One Hundred Fifty and NO/100 ($150.00) Dollars per courtroom appearance and Seventy-five and NO/100 ($75.00) Dollars per deposition appearance. All such fees together with the court reporters' deposition charges are to be taxed as costs of this proceeding and the defendant, THE HANOVER INSURANCE COMPANY, is cast will all costs of this proceeding.
Costs of this appeal are taxed one-half (½) to THE HANOVER INSURANCE COMPANY, appellee, and one-half (½) to GLENDA DUNLAP LUNEAU, individually and as Administratrix of the estates of her minor children, appellant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Luneau's Mobile Homes was not named by plaintiff as a defendant in this suit.
[2] Hanover filed for and obtained a devolutive appeal from the trial court judgment, however, as noted hereafter, Hanover abandoned its appeal.
[3] Although the trial judge found that Robert's fatal heart attack occurred on November 29, 1982, the record is clear that the heart attack actually occurred on November 25th resulting in his subsequent death on November 29, 1982.
[4] Unlike Robert who experienced almost constant pain from Wednesday until his heart attack on Sunday, the plaintiff in Schneider had only one bout of illness at work prior to his fatal heart attack.