418 So.2d 626 (1982)
Mrs. Alcide GUIDRY, Indiv., etc.
v.
SLINE INDUSTRIAL PAINTERS, INC. et al.
No. 81-C-3116.
Supreme Court of Louisiana.
July 2, 1982.
Rehearing Denied September 3, 1982.
*627 Christopher M. Trahan, Raggio, Cappel, Chozen & Bernard, Lake Charles, for applicant.
Bernard H. McLaughlin, Jr., Robert S. Dampf, Stockwell, Sievert, Viccelio, Clements & Shaddock, Lake Charles, for respondent.
CALOGERO, Justice.
Plaintiff's husband, an industrial painter, died shortly after suffering a heart attack on his job. It was an acute myocardial infarction secondary to atherosclerotic heart disease.
The narrow question in this workmen's compensation case is whether the admitted accident (heart attack) which caused Mr. Guidry's death, to be compensable, must in some degree have been causally related to physical stress, strain, or exertion of the job; and if so whether Guidry's heart attack was related, in part, to work stress, strain, or exertion.[1]
*628 Alcide Guidry, a fifty-three year old industrial painter, suffered an acute myocardial infarction secondary to atherosclerotic heart disease minutes after pausing for a smoke break while at work. After a trial on the merits, the judge denied recovery both for compensation benefits and for penalties and attorney's fees. The Third Circuit Court of Appeal was inclined to affirm the district court judgment in favor of the defendant, but declined to do so because they believed that Adams v. New Orleans Public Service, Inc., (La.1982), No. 81-C-0784 was controlling and required a holding for the plaintiff in all cases where death from a myocardial infarction occurs on the job. Guidry v. Sline Industrial Painters, Inc., 406 So.2d 303 (La.App. 3rd Cir. 1981). Between the time of the Court of Appeal opinion in this case and the application by the defendant for writs, we granted a rehearing in the Adams case. Because the Court of Appeal had resolved this case on the strength of the non-final Adams decision of this Court, we granted relator's writ application.
We affirm the Court of Appeal judgment in favor of plaintiff, not for the reason relied upon by the Court of Appeal and espoused originally in Adams (that the accident happened on the job and nothing more is required) but rather for the reason that Guidry's myocardial infarction both occurred on the job and was causally related in some measure to physical stress, strain or exertion of his job. We disagree with the trial judge's determination that Guidry's accident (heart attack) was unrelated to his work on December 28, 1979. In achieving this result in the case under consideration, we expressly reject the following language in Adams on original hearing:[2] "where an injury occurs suddenly or unexpectedly it is compensable despite the absence of any physical stress or exertion," and "[t]he only pertinent inquiry is whether in fact, the accident [heart attack] happened on the job."
The requirements for a successful claim for workers' compensation as set out in La.R.S. 23:1031 are as follows:
If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis supplied.)
An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973); Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932). Such a showing alone, however, does not satisfy Louisiana's dual requirement, although it will assist the worker over the first hurdle.[3] There is the additional requirement that the accident "arise out of the employment."[4] Arising out of employment contemplates the accident's being the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Lisonbee, supra at 9, *629 citing Kern, supra 141 So. at 21. Furthermore, this risk of employment from which injury resulted should be one greater than that occasioned by a person not engaged in the employment. Lisonbee, supra, citing Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256 (1917).[5]
Subsequent appellate decisions have applied jointly the time, place and circumstance test of the Kern case, and the increased risk doctrine of the Myers decision. Turner v. United States Fidelity & Guaranty Company, 339 So.2d 917 (La.App. 3rd Cir. 1976); Mitchell v. Employers Mut. Liability Ins. Co., 341 So.2d 35 (La.App. 3rd Cir.), writ refused 342 So.2d 1121 (La.1977).
Malone and Johnson, with credit to Professor Larson, interpret the court's recognition of the mutual dependence of the dual requirements "in the course of" and "arising out of" as an adoption of the "positional risk doctrine." Malone and Johnson, supra at 289. So, as relates to ordinary traumatic incidents, such as being struck by a car or by lightning or by being assaulted by a stranger, being on the job is an aid to establishing that an ordinary traumatic incident because it arose out of employment was likewise in the course of employment. Malone and Johnson, supra §§ 191-200, 382 et seq.; Kern, supra.
A class of accidents defying definition under the "positional risk doctrine", however, are those which, while occurring when the employee is undeniably performing the duties for which he was hired, are related partly to the employee's personal physical condition.[6] Malone and Johnson conclude therefore, supra at 289, "[r]esorting to Larson's phrase-making again, recovery under the positional risk doctrine is limited to neutral risks, risks that are unrelated to the worker's bodily deficiencies ... and are also unaffected by the nature of his particular job or his working environment."
To deny compensation to those workers who bring a personal risk to the job, however, contravenes the tradition that the employer takes his employee as he finds him. Chism v. Kaiser Aluminum and Chemical Corp., 332 So.2d 784 (La.1976).
In the face of this dilemma, Louisiana courts have relied upon the "increased risk" approach to such claims Malone and Johnson, supra at 292. The pertinent justification is couched in Lisonbee supra at page 9 quoting 259 So.2d 374, 377 (La.App. 2d Cir.).
The principle underlying the enactment of the workmen's compensation statute that those who enjoy the product of a business should ultimately bear the cost of injuries incident theretomakes sense only if the injuries bear some significant relationship to the business operation. Such a relationship must be determined with reference to the particular facts of each case inasmuch as there is no exact rule for such determination.
Myocardial infarctions (heart attacks) have been found to satisfy the statutory requirements of personal injury by accident. Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir.), cert. denied 345 So.2d 902 (La.1977); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Brown v. Kaiser Aluminum & Chem. Corp., 250 So.2d 99 (La.App. 4th Cir.), cert. denied 259 La. 807, 253 So.2d 66 (1971); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946). Likewise it is undisputed that the worker who experiences his heart attack/accident during an authorized rest period does so in the "course of his employment". Smith v. Walker, 35 So.2d 766 (La. App. 2d Cir. 1948); St. Alexandre v. Texas Co., 28 So.2d 385 (La.App.Orl.Cir.1946).
The more difficult question is whether the heart attack must be the consequence of some increased job associated risk; in that *630 sense, whether it can be said to arise out of the employment. This focus on the heart accident and the need for a causal connection with the work is consistent with the cases decided by this court.
We will undertake to review the jurisprudence of this Court in that area.
In awarding compensation based on heart incidents, the early decisions focused on physical exertion and heat. In Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946), a carpenter's normal activities for the day in question required him to carry four 95 pound rolls of composition paper up a ladder to the roof and work there in the sun. When he finished the job, he complained of severe chest pains and died forty five minutes later on his way home from visiting the doctor. The Court found supra at 626-627 that:

Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. (Citations omitted) (Emphasis supplied)
Other similar cases followed. Sepulvado v. Mansfield Hardwood Lumber Co., 75 So.2d 529 (La.App. 2d Cir. 1954); Clifton v. Arnold, 87 So.2d 386 (La.App. 1st Cir. 1957); Talbot v. Trinity Universal Ins. Co., 99 So.2d 811 (La.App. 1st Cir. 1958); Brian v. Employers Casualty Co., 111 So.2d 161 (La. App. 2d Cir. 1959); McKnight v. Clemons, 114 So.2d 114 (La.App. 1st Cir. 1959); Andrepont v. Calcasieu Paper Co., 131 So.2d 585 (La.App. 3d Cir. 1961); Spivey v. Aetna Casualty & Surety Co., 127 So.2d 297 (La. App. 4th Cir. 1961); Young v. Old Colony Insurance Co., 150 So.2d 892 (La.App. 4th Cir.) cert. refused 244 La. 472, 152 So.2d 564 (1963).
What might be referred to as the current jurisprudence in this Court in heart attack worker compensation cases begins with Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (La.1969), the leading case insofar as establishing the rebuttable causation presumption between the occurrence of an accident and the onset of disability.[7] That case in no way lessened the requirement of proving a causal relationship between the employment and the accident. Bertrand was a laborer who, this Court noted, supra at 825, "[a]s a principal part of his employment ... was required to mix concrete, transport it by wheelbarrow, pour it into forms and otherwise perform heavy labor." The court said plaintiff's hard work and exertion caused the disabling disease to manifest itself. More particularly, the exertion, even though usual for Bertrand and the job duties he had performed for some fifteen years, combined with his arteriosclerosis and a pre-existing defective artioventricular node, caused a conduction fault in his heart. Review of the jurisprudence by Chief Justice Fournet, dissenting from the majority view on original hearing in Bertrand, highlighted the Hemphill distinction between instances of real although usual and customary exertion on the one hand, and instances involving external trauma on the other. The Bertrand majority on rehearing accented that exertion from usual and customary activities may serve as a cause of a vascular accident. That finding is certainly not a determination that there need be no relationship between the work and the accident. Rather it is just the contrary.
Three years later, Bertrand was cited in Ferguson v. HDE, Inc., 270 So.2d 867 at 869 (La.1972) for the proposition that
extraordinary physical stress and strain is not essential to the definition of disabling accident: when the performance of *631 the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present.
Ferguson was a mental stress/stroke case[8] which overruled Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468 (1963) and held that physical disability resulting solely from extraordinary mental or emotional causes qualified as an injury by accident, and was compensable.
Since then, the two cases, Bertrand and Ferguson, have been cited for the general proposition that only the "usual and customary actions, exertions ... of the employment" are required. Leleux v. Lumbermen's Mutual Insurance Co., 318 So.2d 15 (La.1975); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). Interestingly, in each of these cases, the usual and customary actions, constituted real and significant instances of exertion and stress which would under any analysis constitute more than the exertion and stress associated with the more or less sedentary activities of the average non-worker. Leleux involved an obese truck driver with a history of high blood pressure who suffered a cerebral vascular accident, or stroke, and was found near the rear of his truck. Besides shoveling rice he had hauled four loads of rice and was at the time having his truck filled with a fifth load. The Roussel plaintiff was a machinist and although the Court repeated the now familiar language of "usual and customary,"[9] the facts and the conclusions of the Court did not represent any extension of the earlier jurisprudence.[10]
In the instant case, the record reveals that decedent was engaged in manual labor as a machinist in the refinery at the time of the fatal heart attack. He was performing the usual and customary duties of his employment. We have no hesitancy in concluding that these activities were strenuous in nature. There is no dispute that decedent did, in fact, have a history of hypertension and that he did suffer a myocardial infarction resulting in immediate death while performing the duties of his employment. It is established by the medical testimony that the myocardial infarction suffered by decedent on the job which resulted in his death could have been caused or precipitated by the usual and customary actions and exertions of decedent's duties as a machinist. Causal connection was thus clearly established by a preponderance of evidence in this case. Roussel, supra. (Emphasis supplied)
That brings us to our Adams decision on original hearing[11] and more particularly, *632 the Court of Appeal's application of that decision to the facts in the instant case.
Contrary to the language in Adams (and the Court of Appeal reference to that language[12]), the cases out of this Court, however liberal they might occasionally have been insofar as finding sufficient the amount of stress or exertion which has contributed to a given heart accident, have nonetheless never before taken the position the absence of physical stress or exertion is of no moment, or that the occurrence of a heart attack on the job is the only relevant inquiry.
In summary the jurisprudence of this Court has been fairly liberal in linking ensuing disability to admitted work accident (for example, there is the Bertrand presumption of causal connection between accident and disability), and insofar as linking work accident to work stress and exertion without the necessity for a traumatic incident. But there has been in this Court's jurisprudence no determination that there exists a presumption that a heart accident sustained at work is caused by the employment.[13] Also, except for Adams on original hearing (and see the Court of Appeal decision in Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2d Cir. 1982) (writ denied, 416 So.2d 114, 1982: "Result Correct"), the cases in this Court have always required that there be some causal relation between employment and accident. This conclusion that a heart accident must be causally related in part, however slight, to the employment, is no new or novel approach to applying the compensation law. It is implicit, and occasionally express, in the cases discussed hereinabove. Professors Malone and Johnson observe in their treatise, supra at 437-39: "[t]he required `injury by accident' has thus been found to have occurred in instances of heart attack ... even when these occur during the employee's regular work in the regular way, if a causal relationship between working conditions and disability can be found," (emphasis supplied). The authority given for this statement include our Roussel and Hemphill opinions and intervening appellate decisions.
There is admittedly real difficulty in proving or disproving work related causation in heart accidents because of the fact that a pre-existing vascular infirmity can produce disability irrespective of outside influences. Nonetheless, considering the often divergent and uncertain views of medical practitioners and the necessarily different perspectives of doctors and lawyers on this problem in compensation cases,[14] we have decided in prior cases that work related stress or exertion preceding a heart attack *633 bears a causal relationship to that heart attack, at least in part, even where there is a pre-existing heart disease.
There is no presumption, however, that a vascular accident occurring on the job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
This burden of plaintiff's is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident. Anything less and it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident.
If the physical exertion, stress, or strain on the job, and preceding the infarction, is no more than the worker would likely have experienced in a non-work situation, the attack may be the result of the natural progression of the pre-existing disease rather than the result of the employment activity.
This reality has led Professor Larson to suggest a rule which we draw upon to resolve this amorphous legal problem. See generally: IB. A. Larson, Workmen's Compensation § 38.83, 7-233 (1980)
For the heart accident to arise out of or be connected with the employment, the exertion stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life[15] (e.g., as compared to the more or less sedentary life of the average non-worker).
In other words if the activities in which the worker with a pre-existing heart disease is engaged, whether for his job usual and customary or not, entail exertion, stress or strain greater than would be involved in everyday non-employment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of or was connected with, the employment.[16]
However, simply being at work on the job is not enough, since at the time of and for an appreciable period before the accident such worker (i.e., with a pre-existing heart disease) may not have been engaged in his usual stressful activities, or his usual work may have been of a sedentary nature, or may have involved no physical stress or exertion beyond that generated in everyday non-employment life.[17] In either of these latter cases, it is difficult to say that the *634 accident arose out of the worker's employment rather than that the accident arose out of or was prompted simply by the preexisting heart disease.
Now we turn to the facts of this case. Guidry was fifty-three years old. He had done manual work most of his life. He was employed as an industrial painter through the union by Sline Industrial Painters and assigned to Cities Service Refinery in Calcasieu Parish, Louisiana. On December 28, 1979, the day he sustained the myocardial infarction Guidry had reported for work at 7:30 a. m., as was customary. He and a Mr. Duplechain were assigned the task of painting large rolling doors on a warehouse. They were using a single ladder ten to twelve feet tall. The top portions of the doors which were out of reach to a painter working on the ground were painted by Duplechain, Guidry's role being to brace the ladder to assure Duplechain's safety, and to move the ladder as required. The areas of the doors accessible from the ground were painted by the two men. The pair had worked non-stop from 7:30 a. m. until the noon lunch break, with only a ten minute break during that time at 10:00 a. m. The pair again commenced working after the lunch break and worked until approximately 2:00 p. m.
At 2:00 p. m. the pair, along with some of the other workmen in the area, went inside the building that was being painted to a rest area for a work break. It was at this time that Guidry suffered the heart attack. It caused him to fall from his chair to the ground, unconscious. Mr. Guidry never regained consciousness and died seven days later in the hospital.
Guidry's co-workers, in testifying, stated that Guidry seemed in good health that day and showed no signs of illness. Guidry did not regain consciousness after the incident, so he was unable to tell anyone of any ill feelings he might have been having earlier in the day.
The trial court relied upon the testimony of the treating physicians, Drs. Reichert, Seale and Turner, who were of the opinion that the heart attack was not causally related to the decedent's usual and customary actions or exertions on the job. However, Drs. Reichert and Seale are not heart specialists, the former being a specialist in family practice and the latter a surgery specialist. And Dr. Turner, a heart specialist, when presented with a more accurate hypothetical of Mr. Guidry's activities on the day in question, admitted that there could be some relationship between the described physical activity and the heart attack.
Furthermore, the testimony that the heart attack was not work related was contradicted by the testimony of a cardiovascular specialist presented by plaintiff, Dr. Fastabend. Dr. Fastabend stated that in his opinion the physical exertion of the decedent on that day was such that there was no question in his mind but that the physical activity in which the deceased had been involved triggered the heart attack. Although it is true that Dr. Fastabend was not the decedent's treating physician, he was no less qualified than the other medical witnesses to render an opinion concerning stress and exertion, infarction, and the causal relationship, particularly inasmuch as the patient's unconsciousness and inability to communicate following the accident would tend to reduce the advantage a treating physician might otherwise have had.
Guidry came to work early that morning. He had performed physical and fairly strenuous work for most of the day. He had returned to his duties right after lunch and he continued to work until minutes before the attack. Our appreciation of the evidence in this case prompts us to conclude that Guidry's activities while working on the fateful day of his heart attack, were marked by stress, exertion, and strain greater than that generated in everyday non-employment life, and greater than that generated in the more or less sedentary life of the average non-worker.
We conclude that Guidry's myocardial infarction, and ensuing death, arose out of his employment. His widow, the plaintiff, is *635 therefore entitled to such workers' compensation benefits as the law provides.
There remains an unresolved issue in this case, and that is, whether plaintiff is entitled to penalties and attorney's fees.
When the Court of Appeal reversed the trial court judgment and awarded compensation benefits, they chose to remand the case to the district court for determination of whether or not statutory penalties and attorney's fees should be awarded. The defendant's writ application in this Court complains of the Court of Appeal opinion and may fairly be construed as protesting alternatively that attorney fees and penalties should not be awarded.
The record as presently made up is sufficiently complete to permit this Court to decide this issue. Therefore we will do so rather than remand the case to the trial court for this determination, as the Court of Appeal did.
Considering the serious legal question of causation between employment and accident, which is the main issue addressed in this opinion, and considering the facts of the case, and the varying results in the trial court, Court of Appeal and this Court, we do not find that the defendant was arbitrary and capricious in their neglect to pay compensation benefits.
Accordingly, penalties and attorney fees are denied.

Decree
For the foregoing reasons, the judgment of the Court of Appeal is affirmed insofar as it awards compensation benefits to the plaintiff, but amended to deny plaintiff penalties and attorney's fees.
COURT OF APPEAL JUDGMENT AFFIRMED IN PART AND AMENDED IN PART, AND RENDERED.
DIXON, C. J., concurs in the result with reasons.
WATSON, J., concurs in part, dissents in part and assigns reasons.
BLANCHE, J., dissents and assigns reasons.
DIXON, Chief Justice (concurring).
I respectfully concur in the result.
In the court's original opinion in the Adams case, in the discussion of the question of "causation" by the Court of Appeal, we stated: "the only pertinent inquiry is whether, in fact, the accident happened on the job." When not taken out of context, the statement was and remains correct. An on-the-job accident which causes injury is without doubt or question an "accident arising out of and in the course of his employment" (R.S. 23:1031) and is compensable if, as the statute notes, the employee is not otherwise eliminated from the benefits of the act. The employment need not cause the heart trouble, nor the bad back, nor the arthritis, but if there is an accident on the job, it arises in the course and scope of the employment, and if the accident causes the personal injury no other inquiry into causation need be made.
Neither does the act, nor do the cases, require "any physical stress or exertion" to be compensable. If there is an accident arising out of and in the course and scope of the employment, which injures the employee, he could be asleep, or performing only the normal functions of his job, or otherwise passive, and yet recover. Or the employee could, as Guidry was, be seated at a table in a smoking area taking a break, after several hours at work doing nothing but bracing the lower end of a twelve foot aluminum ladder while his partner was on it, moving the ladder three times and painting one-third of time while standing on the ground. Even in response to leading questions, none of plaintiff's witnesses would acknowledge any stress in Guidry's employment.
Needed clarity and simplicity is not here accomplished. We only furnish fodder for claims adjusters, lawyers and expert witnesses in future caseswas there stress or no stress? It would be preferable to say, simply, that a disabling on-the-job accident is compensable.
*636 If there is an accident which injures, arising in the course and scope[1] of the employment, it is compensable. It is only the tort doctrine of causation in the jurisprudence, not the statutes, which has caused the present confusion of the court.
WATSON, Justice, concurring in part and dissenting in part.
I concur in the majority's award of compensation benefits, but dissent from denial of penalties and attorney's fees.
I disagree with the majority's analysis of causal relationship. Instead of referring to Professor Larson for the analysis used, a simple reference to the law of our state is in order. As noted by the Chief Justice in his concurring opinion in which I join, the question is whether the employee suffered an accident in the course and scope of his employment. Here, Guidry obviously did. To analyze whether there was more strain and stress than experienced by ordinary citizens or sedentary office workers is an idle pursuit, which does not answer the question. It serves only to deny, or at least delay, compensation to deserving employees or their dependents.
There is no question that Guidry suffered an acute cardiac infarction (a heart attack) in the course and scope of his employment. Compensation should have been paid without delay and, because it was not, the defendants should be cast for penalties and attorney's fees.
Therefore, I respectfully concur in part and dissent in part.
BLANCHE, Justice (dissenting).
I respectfully dissent. Plaintiff's myocardial infarction, although occurring on the job, was not even remotely related to the physical stress, strain or exertion required by his job. Guidry's primary duty on the job was to stand on the ground at the bottom of the ladder being used by his co-employee to assure that the bottom of the ladder did not slide out from under the co-employee. The co-employees testified that plaintiff's duties did not entail any stress, strain or other exertion. At a smoking break while seated at a designated smoking area, smoking a cigarette and talking with other employees, plaintiff suffered a sudden heart attack which caused his death. Prior to the onset of this attack, plaintiff displayed no evidence of exertion, stress or any other physical problem. Being unable to show any causal connection between the employee's heart attack and the employment, the accident is not compensable.
The purpose of the workmen's compensation law is to provide compensation for industrial accidents. It was not intended to be a pension for those who suffer from diseases not caused by an accident. Considering the purpose of the act, an accidental heart injury would be compensable but a heart injury solely attributable to the natural physiological progression of disease would not be compensable.
To have an accident, there should at least be an event which is identifiable, either in space or time, and one that can be regarded from a commonsense viewpoint of the average man as an accident. Surely Guidry's fellow workers would be amused to learn that Guidry suffered an accident while smoking and drinking coffee during a work break.
Following this simple test, Guidry should not recover because he had no accident. Guidry's work was not sufficiently strenuous *637 so as to classify as an accident which could have caused him to have an acute myocardial infarction. Stated another way, there was no accidental event and, in the absence thereof, no causal connection between his employment and the heart attack which resulted in his death.
I respectfully dissent.
NOTES
[1] Two other cases contemporaneously before this Court deal with related issue concerning employees with heart conditions, their disability and their eligibility for workers' compensation: Adams v. New Orleans Public Service, Inc. (On rehearing) No. 81-C-0784 pending before this Court, presents the outset question of whether an accident occurred on the job. Guillory v. U. S. F. & G. Ins. Co., 420 So.2d 119 (La.1982), No. 81-C-2471, rendered this day, addresses the issue of whether there was a causal connection between the accident which admittedly arose out of and in the course of Guillory's employment, and Guillory's subsequent disability.
[2] The question of whether this Court will overrule the Adams decision on original hearing will await the outcome of the rehearing pending before this Court.
[3] Compare Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975); Landreneau v. Travelers Ins. Co., 345 So.2d 177 (La.App.1977) and Soileau v. Chet & Kennys Auto Parts. Inc., 337 So.2d 604 (La.App. 4th Cir.), cert. denied 340 So.2d 994 (La.1977).
[4] Both Professors Malone and Johnson and Professor Larson suggest that the legislative choice of "arising out of" was deliberate, and meant to distinguish compensation law from the proximate cause concepts of tort law. See: Malone and Johnson, Worker's Compensation § 143, 13 La.Civ. Law Treatise 280, and 1, A. Larson Workmen's Compensation Law § 6.60 at 3-7 through 3-10 (1978) respectively.
[5] For a thorough discussion of the evolution of the classifications of risks under Louisiana's workers' compensation scheme, see Malone and Johnson, supra. Chapter 7, 271 et seq.
[6] Also included in the exception to the "positional risk doctrine" are those accidents which are outgrowths of events peculiar to the employee's private life. Malone and Johnson, supra at 289 et seq. The facts of this case, however, relate solely to the employee's personal physical condition.
[7] That presumption (not at issue in this case) is that when there is an accident and a resulting disability without any intervening cause, it is presumed that the accident caused the disability.
[8] The plaintiff workman became angry when his paycheck was less than expected and suffered a cerebral thrombosis or cerebral hemorrhage while arguing over the amount.
[9] It is well settled that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when the accidental injury is caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Hence, it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. Further, it is not necessary that the accident resulting in disability or death be caused by extraordinary activities of the employee, or that said activities be the exclusive cause of the accidental injury. Roussel, supra. 318 So.2d at 39. (Citations omitted) (Emphasis supplied)
[10] Compare Barnes v. City of New Orleans, 322 So.2d 821 (La.App. 4th Cir. 1975) which did expand upon the jurisprudence. That of course was not an opinion of this Court, but one of the Fourth Circuit Court of Appeal. Trial court judgment awarding compensation benefits for the death of a clerical city employee who died in bed at home from a myocardial infarction was upheld by the Court of Appeal. That decision is not controlling, and there has not been a similar case handed down by this Court.
[11] In an effort to be complete, it should be noted that three other cases which approach the causation question from a slightly different, though related, perspective have been decided by this Court since Roussel and Leleux. In Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976), the question was whether a "personal injury by accident" had been shown by the plaintiff whose pre-existing respiratory difficulties had been aggravated by her inhaling dust and lint in the course of her employment as a seamstress for a ready to wear garment manufacturer. In Guidry v. Serigny, 378 So.2d 938 (La.1979) the Court pretermitted the heart inquiry by concluding that the plaintiff's accident was the fall itself "regardless of the precipitating reason therefor." Supra at 940. Most recently, McDonald v. International Paper Company, 406 So.2d 582 (La. 1981) placed the Ferguson decision in perspective as precedent for the proposition that death by heart attack produced by extraordinary mental or emotional work-related stress is compensable.
[12] "Where any injury occurs suddenly or unexpectedly it is compensable despite the absence of any physical stress or exertion," and "[t]he only pertinent inquiry is whether in fact, the accident [heart attack] happened on the job." Adams, supra.
[13] See the contrary observation, citing as authority the Leleux decision, Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2d Cir. 1982), writ denied 416 So.2d 114, 1982: "Result Correct". The presumption in Leleux, however, was a reiteration of the Bertrand presumption, i.e., that when there is proof of an accident and an ensuing disability with no intervening cause, it is presumed that the accident caused the disability. This presumption is unrelated to the outset question of whether the accident arose out of the employment. With respect to the causal connection between the work and the accident, Leleux created no legal presumption. Leleux simply "inferred" from the facts [Leleux was the trucker who hauled four loads of rice] "including the heat and physical exertion" that the work had a causal relation to the accident.
[14] See Kostamo v. Marquette Iron Mining Co., 405 Mich. 105, 274 N.W.2d 411 (1979) for thorough analysis of medical-legal interrelationship in heart compensation cases. IB. A. Larson, Workmen's Compensation § 38.30, 7-48. n. 51 (1981).
[15] In particular, Professor Larson notes at 7-237.

If there is some personal causal contribution in the form of a previously weakened or diseased heart, the employment contribution must take the form of an exertion greater than that of nonemployment life.... Note that the comparison is not with this employee's usual exertion in his employment but with the exertions of normal nonemployment life of this or any other person.
If there is no personal causal contribution, that is, if there is no prior weakness or disease, any exertion connected with the employment and causally connected with the collapse as a matter of medical fact is adequate to satisfy the legal test of causation. This is the heart-case application of the actual risk test: This exertion in fact causally contributed to this collapse.
In both situations, with or without prior personal weakness or disease, the claimant must also show that medically the particular exertion contributed causally to the heart attack.
[16] It should be noted that this standard does not relieve the plaintiff of the necessity of presenting evidence of medical causation. This recognizes, however, that the courts are the ultimate decision makers and must decide legal causation questions definitively where proof of medical causation may be at best indefinite. See note 13, supra.
[17] We underscore the fact that our discussion in this case and that of Guillory concern questions of physical stress, strain or exertion. As noted in footnote 11, supra, the standard for heart compensation cases involving mental or emotional stress was enunciated in McDonald v. International Paper Company, 406 So.2d 582 (La.1981) and Ferguson, supra.
[1] "Arising out of" is hardly ever employed in Louisiana jurisprudence, except when there is doubt whether the accident happened in the course and scope of employment, when an "arising out of" theory may be used to reinforce a decision that the employee was not in the course and scope of employment. See the discussion in Malone & Johnson, Workers' Compensation, Section 193, p. 393 (1980), where it is stated:

"... That test, simply stated, is that whereas in Kernthe employee is actively at work or standing by for an immediate return to his task and thus is squarely within the course of his employment, virtually any risk will be considered as arising out of the employment, whether it is an `increased risk' or not...."