BARRY, Judge.
A security guard’s widow and children appeal the dismissal of their workmen’s compensation suit which is based on a fatal heart attack which occurred during employment.
On July 7, 1983 Philip Mayeux, age 43, was hired as an armed security guard by Weiser Security Services, Inc. Mayeux completed Weiser’s training program and from July 25, 1983 was assigned to night duty at a 144 unit motel catering to truckers.
On August 17, 1983 Mayeux reported to work about 9:30 p.m. and spoke to the desk clerk, Ms. Barbara Russo, before starting his rounds. Russo testified that Mayeux had previously discussed a prior heart attack and some personal problems with her, but on August 17 he appeared to be in good health when he left the lobby to make his first 20 minute inspection of the premises. She stated that he returned about five minutes later and said: “Ms. Bonnie, call an ambulance, I think I’m having another heart attack”. Mayeux also requested that *134 Russo call his wife. He never indicated that he encountered a problem outside.
Mayeux was rushed to Charity Hospital where he spoke with doctors and his wife prior to his death. He did not mention any work related problem which might have occurred that evening prior to the attack.
Mayeux’s widow and children contend the trial court erred by finding that no causal link existed between Mayeux’s employment and his fatal myocardial infarction. They claim entitlement to burial expenses and death benefits because May-eux’s death “arose out of and in the course of his employment” under La.R.S. 23:1031[1]. Weiser argues the Mayeuxs failed to prove stress or exertion preceding the attack, thus there is no causal connection between the employment and death.
A compensable accident must arise out of and occur during the course of employment. Both requirements must be met. R.S. 23:1031; Nix v. City of Houma, 488 So.2d 184 (La.1986).
An accident occurs in the course of employment when it happens during the time of employment and at a location contemplated by the employment. A worker who experiences a heart attack while at work does so within the course of his employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982).
It is undisputed that Mayeux’s infarction occurred “during the course of his employment.” Our inquiry is whether the attack can be said to “arise out of the employment,” i.e. is there a causal connection between Mayeux’s work and his heart’s failure.
Although work related stress or exertion preceding a heart attack bears a causal relationship to that attack even where there is pre-existing heart disease, the plaintiff is required to show by a preponderance that the work effort, stress or strain contributed in some degree to the heart attack. Guidry v. Sline, supra, specifies at pp. 633:
For the heart accident to arise out of or be connected with the employment, the exertion, stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life (footnote omitted). In other words if the activities in which the worker with a pre-existing heart disease is engaged, whether for his job usual and customary or not, entail exertion, stress or strain greater than would be involved in everyday non-employment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of or was connected with the employment (footnote omitted).
However, simply being at work on the job is not enough ...
The Guidry court specified that its test applies strictly to attacks arising out of physical exertion, stress or strain and noted that the appropriate standard for heart compensation cases involving mental or emotional stress is enunciated in McDonald v. International Paper Company, 406 So.2d 582 (La.1981) at page 583:
It is well established that an unexpected and catastrophic effect upon an employee, such as death by heart attack, produced by extraordinary mental or emotional work-related stress, is compensa-ble.
Mayeux suffered his first heart attack on July 6, 1982. The diagnosis was enlargement of the heart due to chronic high blood pressure, hypertension and nervousness. He was hospitalized for nine days and told to restrict movement to his home and yard following his discharge. Mayeux went to work at the motel (one year later) without medical authorization and was still undergoing treatment at Charity Hospital for his arteriosclerotic disease when his fatal attack occurred.
*135 Mrs. Mayeux testified that her husband experienced anxiety attacks and constantly worried about money. She admitted that he did not adhere to his special diet and smoked two packs of cigarettes daily, in spite of his physician’s warnings. She said he returned to work because of their financial problems.
Dr. Bruce Samuels, an internist, testified that Mayeux should not have worked the graveyard shift as an armed security guard on solitary patrol at a large motel. He opined that although the specific causes of Mayeux’s attack could not be determined, his work probably contributed to his infarction.
Dr. Lawrence O’Meallie, a cardiologist, testified that Mayeux’s heart attack was not related to his employment. He agreed with Dr. Samuels that it was impossible to determine why the infarction occurred at work, however, he listed high blood pressure and cigarette smoking as major risk factors associated with the acceleration of heart disease.
The trial judge reasoned:
... there was nothing stressful in the job that he [Mayeux] had at the time. According to the testimony of Dr. Samuels and the testimony of Dr. Lawrence O’Meallie that the major contributing factor to the condition, even at the time he was working, since the first heart attack in August of 1982, that he was smoking continuously and in fact never did stop, even to the time of death, and smoked the night after dinner before he went to his employment.
Both physicians agreed that it was impossible to identify the precipitating cause of Mayeux’s attack. They said a number of factors, including caffeine consumption, cigarette smoking, stress from financial problems, arteriosclerosis, etc., could have caused the death.
Mayeux’s attack was unwitnessed. He did not tell Ms. Russo, the doctors or his wife of any incident during his few minutes on the job. We have no basis to conclude that Mayeux experienced physical exertion, stress or strain greater than would be involved in his everyday, non-employment life. Guidry v. Sline, supra. Although employment as an armed security guard may cause mental or emotional stress, Mayeux never complained of work-related stress or problems to his wife or Ms. Russo. See McDonald v. International Paper Company, Inc., supra.
The bottom line is that plaintiffs did not carry their burden of proof, and these facts do not constitute a legal basis for recovery.
The Mayeuxs also contend the trial court erred by recognizing a duty to uphold the decision of the Commissioner of the Louisiana State Office of Worker’s Compensation. We disagree. The judge only noted that he was upholding the Commissioner’s informal resolution against the Mayeuxs. There is no evidence that he ruled in favor the defendant because of the Commissioner’s report.
The judgment is affirmed.
AFFIRMED.

. La.R.S. 23:1031 in pertinent part provides:
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.