COLE, Justice.
A few minutes after he arrived at work, plaintiff’s husband died of a heart attack. Since the death occurred at the place of employment, plaintiff sought workers’ compensation benefits for her husband’s death. The decedent, Stephen Carruthers, suffered from emphysema, hypertension and diabetes, had residual damage from childhood poliomyelitis, and took medication to control the hypertension and to prevent a *473 recurrence of congestive heart failure. Defendant PPG Industries, Inc., his employer, refused to pay benefits, believing the death was not work-related. Plaintiff filed suit and the lower courts found plaintiff failed to prove she was entitled to benefits.
ISSUE RESOLUTION
The issue before us is whether plaintiff proved by a preponderance of the evidence that ascending a flight of stairs at his workplace shortly before death had a causal relationship to Carruthers’ fatal heart attack. The plaintiff contends the work-related exertion, stress or strain need only be of a degree greater than that of decedent’s everyday non-employment life. In Guidry v. Sline Industrial Painters, Inc., 418 So. 2d 626 (La.1982), we determined the correct standard in pre-existing heart disease cases is that the employment-related exertion, stress or strain, acting upon the pre-exist-ing disease, must be greater than that generated in everyday non-employment life. The test is an objective one; the standard reference is the everyday life of the average non-worker.
We conclude the evidence in this case does not meet the applicable standard of proof and we therefore affirm the lower courts.
FACTS
Stephen Carruthers drove to work on the morning of February 2, 1983, parked his car in the plant lot, proceeded to the office building, entered and ascended five steps to a landing on the first floor level. He had climbed these five steps without complaint since the middle of 1980. From the landing he had to ascend approximately eight additional steps in order to reach his office on the second floor. An employee in the office adjacent to Mr. Carruthers saw him pass in the hall. A few minutes later, another employee found him slumped unconscious over his desk. Although medical help was summoned, he could not be revived and the death certificate listed the cause of death as acute myocardial infarction.
Mr. Carruthers worked as a chemical engineer for PPG Industries for 29 years and eight months, from the time of college graduation until his death at age 54. At the time of his death, he had long suffered from a number of ongoing medical problems. He had contracted poliomyelitis at the age of 17, from which he had residual damage to the chest muscles and lungs. He developed high blood pressure and diabetes in the early 1970s, then, some years later, emphysema. The record shows decedent had a history of smoking although it is unclear how much or how long he smoked. At the time of his death, he used an oxygen machine in his off-work hours.
In 1980, Mr. Carruthers had been transferred by PPG from Beaumont to Lake Charles, where he worked as a senior process engineer. In November of 1982, he was assigned to a new project and his office was moved from the first floor to the second floor, near the offices of employees engaged in the same project. He died the following February and his widow, Jean Carruthers, now argues his death was accelerated because he had to climb stairs to the second floor in the course of his employment.
After his sudden death, PPG conducted an investigation. It concluded the death was not a work-related occurrence and plaintiff was not entitled to workers’ compensation benefits. The trial court agreed and the court of appeal affirmed, 534 So.2d 42, finding the plaintiff had failed to prove by a preponderance of the evidence that Mr. Carruthers’ heart attack was causally related to his employment.
ANALYSIS
This workers’ compensation claim is governed by La.R.S. 23:1031, which provides in relevant part:
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation. ...
Under our jurisprudence, myocardial infarctions (heart attacks) have been *474 found to satisfy the statutory requirements of personal injury by accident. See, e.g., Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 629 (La.1982); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946). It is also well-settled that an accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Reid v. Gamb, 509 So.2d 995, 996 (La.1987); Michaleski v. Western Preferred Casualty Co., 472 So.2d 18 (La.1985); Guidry, supra; Lisonbee v. Chicago Mill & Lumber Co., 278 So.2d 5 (La.1973). This is true even if the heart attack occurs during an authorized rest period. Guidry, 418 So.2d at 629. Therefore, even though Carruthers had just arrived at work and might not have begun his daily tasks, his heart attack took place during the time of employment and in the usual place of employment. Thus, we find the injury here occurred “in the course of employment.”
The more difficult question in this case is whether Carruthers’ death arose out of his employment. The function of the “arising out of” requirement of La.R.S. 23:1031 is to assure compensation will be awarded only for personal injury causally related to the employment and fairly part of the employer’s cost of doing business. Reid, 509 So. 2d 995, 996 (La.1987), citing Nix v. City of Houma, 488 So.2d 184 (La.1986); Guidry, supra; Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981) (modified on rehearing); Roussel, supra; Leleux v. Lumbermen’s Mutual Ins. Co., 318 So.2d 15 (La.1975); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). See also, IB Larson, Workmen’s Compensation Law § 38.81 (1986) (hereinafter Larson) and Malone and Johnson, 13 Louisiana Civil Law Treatise— Workers’ Compensation Law and Practice § 191 (2d ed. 1980) (hereinafter Malone and Johnson).
The determination of what compensation payments are fairly considered a part of the employer’s cost of business is best made by looking at the policies underlying workers’ compensation:
The purpose of the [workers’ compensation] Act is to single out employment risks from the general body of dangers to which ⅝11 mankind is exposed. The perils of employment have been regarded by our legislature as deserving special treatment because they present special economic and social problems not typical of accidents generally. It has been said that the purpose of compensation is to spread the cost of industrial accidents among the consumers of the industry’s product.
Malone and Johnson, supra, § 192 at 387.
In many situations, compensation follows automatically from accidental injury in the workplace. For example, benefits are awarded when the employee does not contribute in any way to the injury which occurs, but is merely in the workplace at the time. In these instances, any employment nexus, even the fact the employer merely put the employee in the place where the injury occurred, suffices for recovery. On the other hand, when the employee contributes some personal element of risk, e.g. heart disease, the employment must increase the risk of injury before the employee can be compensated. Employment factors must offset the causal contribution of the personal element of risk. IB Larson, supra, § 38.83(b).
Some scholars have argued that every accident occurring in the course of employment should be compensable regardless of the nature of the risk involved, and some jurisdictions have adopted such a view. Most states, however, have insisted the risk that brought about the accident must bear some relationship to the nature of the employment. Malone and Johnson, supra, § 192. Our legislature adopted the latter view by incorporating into La.R.S. 23:1031 the requirement that an accident arise out o/the employment to be compen-sable. Our law insists that the risk which brought about the accident be related in some way to the nature of employment and caused by some unique characteristic associated with the work or the working environment. Malone and Johnson, supra, at § 143.
*475 The legislative choice is appropriate. A rule requiring employers to compensate every injury, regardless of whether the employment in any way caused the injury, would unfairly burden employers and thus threaten the availability of adequate compensation for those employees whose injuries were in fact caused by their employment. Moreover, were the rule otherwise, many employers would be reluctant to hire workers with even slight health problems if the natural progression of employees’ illnesses, rather than work-related causes, made employers liable for compensation. As Professor Larson has explained:
If the time has come for the employee to die a natural death, or to expire from the effects of some disease or internal weakness of which he would as promptly have expired whether he had been working or not, the fact that his demise takes place in an employment setting rather than at home does not, of course, make the death compensable.
1 Larson, supra, at § 7.20. At the same time, employees who deserve compensation should not be denied. Thus the long-standing rule is that an employer must take the worker as he finds him. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1917).
Death from heart disease is ordinarily the result of natural physiological causes rather than trauma or particular effort. Therefore, in order to reconcile the competing policy considerations noted above and protect the interests of both employee and employer, many courts have established special rules for proof of causation in heart disease cases. These rules reflect the belief that compensation should not be awarded for deaths not really caused in any substantial degree by the employment. IB, Larson, supra, at § 38.81.
Our jurisprudence in this area has been termed “fairly liberal.” However, it has also been noted that even though a claimant’s burden of proof in heart attack cases has been greatly relaxed, such cases should not be regarded as dispensing with the requirement that the claimant establish some causal link between the employment and the disabling event. See, Reid v. Gamb, Inc., 509 So.2d 995 (La.1987); Guidry, 418 So.2d at 632; see also, Adams v. New Orleans Public Service, Inc., 418 So.2d 485, (La.1981) (modified on rehearing); Malone and Johnson, supra, at § 215. This court has rejected the idea that merely because a heart attack occurs on the job it is compensable. We have never created a presumption that a heart attack sustained at work is caused by the employment. In fact, our cases have always required there be some causal relation between employment and accident. Guidry, 418 So.2d at 632.
In Guidry, we determined the degree of work-related stress or strain necessary to satisfy the legal test of “arising out of” the employment. Causation was examined in the context of pre-existing heart disease. The Guidry standard or formula in cases of this nature is:
For the heart accident to arise out of or be connected with the employment, the exertion, stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in every day non-employment life {e.g., as compared to the more or less sedentary life of the average non-worker).
Guidry, 418 So.2d at 633 (emphasis added).
As Guidry makes clear, the standard is an objective one. Thus plaintiff urges us to adopt a new, subjective test by arguing we should compare the employee’s work-related stress to the amount of stress in his non-employment life to determine whether the heart attack was job-related. We decline to do so. Such a standard would ignore the considerations of causation and attendant fairness to employers and thus contravene the underlying purposes of the compensation statute.
We are also mindful of the rule in workers’ compensation cases that the plaintiff has the burden of proving the causal link between the employment and the accident by a preponderance of the evidence. Reid, 509 So.2d at 997 (La.1987); Guidry, supra; Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Plaintiff must thus show by a preponderance of the evidence that the work effort, stress or strain con *476 tributed in some degree to the heart “accident.” Unless this burden of proof is met, it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident. Guidry, 418 So.2d at 633. The rule does not require the claimant to prove the work was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating or aggravating factor. The presence of a history of arteriosclerosis or even the fact a heart attack was “inevitable,” does not necessarily preclude an award. Reid, 509 So.2d at 997 (citations omitted).
In applying these principles, we have not hesitated to award compensation where the evidence has established a causal link between the employment and the claimant’s heart problem. See e.g., Nix v. City of Houma, 488 So.2d 184 (La.1986) (stress of two-day work-related trip away from home, seminar and drive home in traffic and rain combined to contribute to heart attack of 64-year-old diabetic); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981) (modified on rehearing) (heat and physical stress of plaintiff’s employment clearly brought on angina pectoris); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975) (decedent died of heart attack after working for three days dismantling a 175-pound pump); Leleux v. Lumbermen’s Mutual Insurance Co., 318 So.2d 15 (La.1975) (decedent suffered stroke after hauling four loads of rice in non-airconditioned truck in extreme heat); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968) (plaintiff suffered permanent disability from heart condition caused by mixing, hauling and pouring concrete under hot sun); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946) (carpenter died after working all morning on a roofing job requiring him to carry 90-100 pound rolls of roofing paper up a 12-13 foot ladder).
Conversely, where causation was not established under the Guidry test, compensation has been properly denied. Wooley v. State of Louisiana, Through Dept. of Health and Human Resources, 527 So.2d 573 (La.App. 3d Cir.1988) (compensation denied to 263-pound claimant with hypertension, diabetes, and family history of heart disease even though usual duties as “gate guard” were physically and emotionally stressful); Mayeux v. Weiser Security Services, Inc., 508 So.2d 132 (La.App. 4th Cir.1987), cert. denied, 512 So.2d 454 (La.1987) (compensation denied where security guard died of heart attack which could have been caused by caffeine consumption, smoking, financial stress or arteriosclerosis); Edwards v. Exxon Co., 485 So.2d 228 (La.App. 3d Cir.1986), cert. denied, 489 So.2d 250 (La.1986) (causation not shown where plaintiff’s routine work-related tasks on morning of stroke included resolving problem with frozen valve and emptying of five-gallon bucket of condensate); Johnson v. Hendrix Manufacturing Co., Inc., 475 So.2d 103 (La.App. 2d Cir.1985) (foundry worker who performed heavy manual labor, but who also suffered hardening of the arteries, extreme overweight, high level of fat and uric acid in the blood, history of smoking and heavy consumption of caffeine, denied compensation where most significant factor contributing to heart attack was chronic hypertension); Pennington v. Reading and Bates Construction Co., 432 So.2d 1173 (La.App. 3d Cir.1983) (compensation denied to welder’s foreman who suffered heart attack a few minutes after riding bus to job site where no evidence was produced of job-related stress or strain).
In short, under our jurisprudence, when the employee suffers from a pre-ex-isting heart illness, compensation is properly denied if it does not appear that some work incident actually triggered the attack with resulting death or disability. See Malone and Johnson, supra, § 232 at 495. Thus, if plaintiff failed to meet the burden of establishing the causal link between employment and the disabling event, her claim will not succeed. Reid v. Gamb, 509 So.2d 995 (La.1987); Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
EVIDENCE
Mrs. Carruthers testified the last time decedent climbed stairs was in 1980 *477 when the Carruthers were transferred from Beaumont to Lake Charles. While looking for a new home, they resided in a second floor apartment and she contends decedent had to stop at the top of the stairs and rest due to his severe emphysema. The record shows, however, that decedent climbed at least five steps to enter the PPG office building between July of 1980 and November of 1982, apparently without complaint.
Because of his severe breathing difficulties, decedent used an oxygen machine when he was at home. He was attached to the machine by a hose, and his activities were restricted to reading and watching television. Apparently decedent so rarely emerged from the house that Dr. David Dobbins, who was a neighbor and the treating physician at the time of death, said, “If he had not come to my office, I would have thought Mrs. Carruthers was a widow.”
Mrs. Carruthers testified when her husband’s office was moved from the first to the second floor, he told her he wished he could keep the first floor office. The Car-ruthers’ daughter, an LSU student at the time, said her father told her he had to go down to the first floor to confer with other employees. However, this latter testimony was rebutted by PPG employees who said after decedent got to his second floor office, he conferred only with employees in offices clustered near his own. Nothing else in the record shows decedent complained of or commented to anyone about having to climb stairs at work. Although he saw his treating physician, Dr. David Dobbins, at least every other month, Mr. Carruthers did not mention having to climb stairs at work to the doctor.
The record shows PPG was aware of decedent’s physical limitations. When Mr. Carruthers first came to Lake Charles, he was examined by the PPG plant doctor, Dr. Harold Lovejoy. Dr. Lovejoy recommended decedent be given only sedentary work and be kept out of operating areas of the plant where his breathing problems could be aggravated by fumes. In fact, Mr. Carruthers’ job was entirely sedentary, since all his duties involved analyzing data at his desk.
The decedent’s supervisor testified that, to his knowledge, decedent was not under mental or emotional stress in connection with the project he was working on nor was there an immediate deadline since the project had a two-year time frame. This evidence is supported by Mrs. Carruthers’ testimony that the weekend before his death, Mr. Carruthers talked at some length and with enthusiasm about the project he was working on. On Monday, he worked but was disappointed that evening when he was prevented from watching an opera because of cable television difficulties. In a pretrial deposition, Mrs. Carruthers said her husband spent all evening “glaring” at the TV and working on his income tax. His death came on the following workday. There was medical testimony at trial to the effect the ischemic process, whereby blood supply to the heart is decreased, could have begun with these frustrations.
In addition to this testimony, the record contains opinions of five doctors concerning the causal relationship of decedent’s work-related stress to his heart attack. Dr. Alfred Brady, Jr., the cardiologist who treated decedent during the years he lived in Beaumont, testified by deposition that Mr. Carruthers developed heart failure as a result of his severe lung disease. Furthermore, he was a high-risk candidate for coronary artery disease and heart attack because of his diabetes and hypertension. While it was theoretically possible that climbing the stairs “could have” had a causal relationship to Mr. Carruthers’ death, Dr. Brady said other factors were also important, such as the distance between the parking lot and the building, as well as the temperature outside that day. He further testified, the ischemic process preceding the heart attack could have begun as long as 24 hours before death. Had this been the case, he opined, climbing the stairs could have served as a “finishing off factor” since Mr. Carruthers was “basically speaking ... a time bomb to start with.”
*478 Dr. Paul Shaw, a specialist in lung diseases who also treated Carruthers in Beaumont, also testified by deposition. When Dr. Shaw last saw him in 1980, he was in a rehabilitation program which sought to increase the level of his ability by encouraging him to exercise to the limits of his tolerance. At that time, exercising to the point of breathlessness would not have hurt Carruthers. This opinion was apparently based on Dr. Shaw’s belief that his heart condition resulted from emphysema and hypertension, not from coronary artery disease. Finally, Dr. Shaw would express no opinion as to whether climbing stairs might have led to Mr. Carruthers' death because he had not seen him during the last three years of his life.
Three other doctors testified as witnesses at trial. The first was Dr. Harold Love-joy, PPG plant physician in Lake Charles, who had recommended decedent be restricted to sedentary work. Dr. Lovejoy believed decedent was not the type of person who should engage in physical exertion and said he would have recommended Mr. Car-ruthers not be forced to climb steps had he been asked. While Dr. Lovejoy said it was impossible to ascertain when the ischemic process began, he believed it could have started when decedent became frustrated because he couldn’t watch his television program and worked on his taxes instead. Dr. Lovejoy conceded climbing the stairs might have precipitated the fatal heart attack, yet he opined Mr. Carruthers’ condition was such that “he could have had a heart attack at any time, steps or no steps, at night or in the morning or any time.” Finally, in Dr. Lovejoy’s opinion, the duties of Carruthers’ job, including walking into the building and up the steps, would not have exerted greater stress on his pre-ex-isting problems than the everyday tasks in the life of the average non-employed person.
Dr. Charles Woodard, a cardiologist who PPG retained to examine decedent’s medical records, also testified. Dr. Woodard’s opinion was that Mr. Carruthers was at a “higher” risk of heart attack because of four significant pre-existing problems: emphysema, diabetes, hypertension, and a history of smoking. Furthermore, Dr. Woodard could not say more probably than not that walking up the stairs caused Mr. Car-ruthers’ heart attack. He did say decedent’s job-related activities — walking, working at a desk, climbing stairs — were equal to the activities of the average person’s non-employment life. In particular, Dr. Woodard did not consider climbing stairs significant exertion since heart patients do so seven to 10 days after a heart attack. Dr. Woodard said other ordinary activities, such as taking a very hot or very cold shower, cause an amount of stress equal to that of climbing stairs.
The last doctor to testify at trial was Dr. David Dobbins, a family practitioner and treating physician at the time of Mr. Car-ruthers’ death. He explained two of Car-ruthers’ medications alleviated strain on the heart and improved its ability to pump, while a third controlled his blood pressure. In Dr. Dobbins’ opinion, climbing the stairs could have precipitated the heart attack and did in fact contribute in some degree to the heart attack. On the other hand, Dr. Dobbins did concede any physical activity Mr. Carruthers engaged in was stressful to him. Although Dr. Dobbins said Mr. Car-ruthers always called right away when he had a problem, he never complained to Dr. Dobbins about being stressed from climbing the stairs at work.
CONCLUSION
We find the plaintiff failed to prove by a preponderance of the evidence that Car-ruthers’ heart attack was caused by work-related stress to any degree whatever. The strongest evidence of a causal relationship came from Dr. Dobbins, who said he believed climbing the stairs contributed in some degree to Carruthers’ heart attack. Four other physicians were willing only to speculate that climbing the stairs could have caused the heart attack. Plaintiff urges us to apply the rule of Williams v. Liberty Mutual Insurance Co., 327 So.2d 462, 468 (La.App. 3d Cir.1976) where it was held not in error to accord the opinion of the treating physician greater weight where medical testimony was conflicting. *479 Even according greater weight to Dr. Dobbins’ testimony, his statement balanced against the overwhelming weight of the other evidence in the case fails to prove more probably than not a causal relation between Carruthers’ work and his heart attack.
Lay testimony may be relied on to support a causal connection when there is positive medical testimony to the contrary. Reid, 509 So.2d at 997. In this context, we have considered Mrs. Carruthers’ testimony that in the last years of his life her husband avoided climbing stairs because of his severe emphysema. Still, the evidence as a whole does not support a finding that Carruthers’ employment stress or strain, acting on his pre-existing condition, was of a degree greater than that generated in the everyday non-employment life of the average person. Guidry, supra, 418 So.2d at 633. The unrebutted testimony in the record shows the contrary is true. We cannot say the average non-employed person does not climb a flight of stairs or exert himself in some equivalent physical manner.
As we stated in Guidry:
[S]imply being at work on the job is not enough, since at the time of and for an appreciable period before the accident such worker (i.e., with a pre-existing heart disease) may not have been engaged in his usual stressful activities, or his usual work may have been of a sedentary nature, or may have involved no physical stress or exertion beyond that generated in everyday non-employment life. In either of these latter cases, it is difficult to say that the accident arose out of the worker’s employment rather than that the accident arose out of or was prompted simply by the pre-existing heart disease.
Guidry, 418 So.2d at 633-34 (emphasis supplied).
We have held a causal relationship may be inferred when there is proof of an accident during the course of employment and an ensuing disability or death with no intervening cause. Leleux v. Lumbermen’s Mutual Insurance Co., 318 So.2d 15, 17 (La.1975). Nevertheless, the evidence must show more probably than not the work precipitated the injury. Id. Here, the plaintiff has produced only the unsupported inference that use of the stairs in a state of poor health caused or contributed to decedent’s heart attack. Such inference alone is insufficient to meet the burden of proof.
If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Here, the evidence leads to the conclusion that decedent’s heart attack was as likely caused by the natural progression of his disease as by any work-related stress.
For the foregoing reasons, we find plaintiff failed to prove more likely than not Mr. Carruthers’ heart attack was caused or contributed to by the stress of his workplace or his employment duties. The lower courts, in finding as a matter of fact that the employment did not contribute to Car-ruthers’ death, were not manifestly in error or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In light of this factual finding, their decision to deny recovery was also correct as a matter of law. Accordingly, we affirm the rulings of the lower courts.
AFFIRMED.
DIXON, C.J., and DENNIS, J., dissent with reasons.
WATSON, J., dissents.