MARVIN, Judge.
In this worker’s compensation action, the claimant, who had a history of heart trouble, appeals a judgment rejecting his demands for benefits for disability that arose after he had a heart attack (myocardial infarction) while working.
We affirm. Claimant did not offer opinion or other evidence from which we may conclude that he “established medically” what he contends, that is, that the stress and exertion of his work contributed to his disability. Schneider v. Strahan, 449 So.2d 1338 (La.1984); Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982); Johnson v. Hendrix Mfg. Co., Inc., 475 So.2d 103 (La.App. 2d Cir.1985); Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir.1988), writ denied.
FACTS
Darrell Davis, age 39, was working as manager and cook of a Waffle House restaurant when the heart attack occurred. He experienced pain in his chest and left arm around 4:30 p.m. on January 17, 1983. He was taken to LSU Medical Center in Shreveport, where he reported that his chest pains began while he was “washing walls.” At trial, he said they began while he was cooking “about four or five orders” of food for customers in the restaurant.
Davis testified that he had been working 16-18 hours a day and sleeping on a cot at the restaurant for several days before January 17, to get the restaurant ready for an inspection by Waffle House “big shots” from Atlanta. He could not remember when the inspection was to be held, but said he “only had a couple of days to get the place cleaned up.”
Under cross-examination, Davis testified that he left the restaurant at 11:00 p.m. the night before, when his shift ended, and that he arrived for work at 2:00 p.m. on January 17, about 2lh hours before he experienced the chest pains. He admitted that the duties he performed to get the store ready for the inspection were the same as his regular duties, making sure *520 the restaurant was clean and the kitchen equipment was working.
Davis denied, but his medical records show, that he had had two prior heart attacks, one in 1978 and one in 1979. According to those records, which he introduced as evidence, he had learned in 1979 that one of his coronary arteries was completely blocked, but refused to have corrective bypass surgery and did not take medicine that was prescribed in lieu of surgery. The records also state that Davis “quit taking” medication that was prescribed in August 1982, during his hospitalization for chest pains when a stress test ruled out a heart attack. At trial, Davis categorically denied that he was ever on heart medication before January 17, 1983.
LAW
The fact that Davis had pre-exist-ing heart disease and was susceptible to a cardiovascular accident does not defeat his claim. On the other hand, the fact that his heart attack occurred while he was at work does not raise any presumption or satisfy his burden of proving that the heart attack “arose out of” his employment.
Davis had the burden of proving, legally and medically, that his employment contributed causally to the heart attack, by showing that his work activities, acting upon his pre-existing heart disease, entailed greater exertion, stress or strain than everyday nonemployment activities. See cases cited supra.
Other than his own testimony, Davis presented no evidence of whether or how his employment activities may have contributed to his heart attack. His testimony about his long hours and burdensome duties was weakened by cross-examination. His credibility was seriously impeached by his medical records. His testimony, taken as a whole, does not show that his work subjected him to greater exertion, stress or strain than everyday nonemployment activities.
Davis did not offer trial or deposition testimony from any of the doctors who treated him in 1983. The opinion of the doctor who did the bypass surgery after the 1983 heart attack, that Davis’s heart disease was most likely due to genetics and heavy, smoking, was contained in a letter the doctor wrote to Davis’s lawyer in September 1983, and was introduced as a defense exhibit.
The surgeon stated in this letter that Davis’s heart disease “was not related to any injury occurring at the Waffle House.” He also stated, “I have not treated Mr. Davis for injuries sustained in any accident involving the Waffle House.” The doctor obviously did not consider Davis’s heart attack to be an “injury” or an “accident,” as the worker’s compensation law does.
Davis’s lawyer objected to the “semantics” of the letter, stating “[W]e don’t contend that Mr. Davis suffered some type of external trauma like being in a car wreck or being hit by something or a fall.... [T]he court is aware of how the law [regards] a heart attack as being an injury and how a doctor may [not].”
The court stated it would not consider the doctor’s statement as a legal conclusion, and Davis’s lawyer said he had no other objection to the letter. The trial court’s reasons for judgment satisfy us that the court made the proper legal analysis of the arising-out-of-the-employment issue.
CONCLUSION
Davis did not introduce any medical evidence to show whether or how the work activities he described may have contributed to his heart attack. He showed only that he sustained, while at work, a myocardial infarction to which his condition made him susceptible.
The trial court correctly found that Davis did not prove that his work activities entailed greater stress, strain or exertion than his everyday nonemployment life and that they acted on his pre-existing heart disease and contributed to the heart attack. Davis did not introduce evidence on these critical elements and failed in his burden of proof. See and compare Johnson v. Hendrix Mfg. Co., Inc., supra, and Wooley v. *521 State, Through DHHR, 527 So.2d 573 (La.App. 3d Cir.1988); Carruthers v. PPG Industries, Inc., 543 So.2d 472 (La.1989), on rehearing, 551 So.2d 1282 (La.1989).
DECREE
At Davis’s cost, the judgment is AFFIRMED.